[Civ. No. 3121.   First Appellate District, Division Two.—December
17, 1919.]

## J. J. GRISWOLD, Appellant, v. PACIFIC ELECTRIC RAILWAY COMPANY (a Corporation), Respondent.

[1] NEGLIGENCE—ACTION FOR DAMAGES—SYMPATHY FOR PLAINTIFF—RESPONSIBILITY FOR TAKING CHANCES.—In an action for damages for personal injuries, the element of sympathy for the suffering, mental or physical, of the plaintiff can be given no weight if he took chances which the law declares can only be taken upon the responsibility of those who take them and so bring themselves and others into peril. The fact that others take or have taken similar chances and have escaped injury cannot be given any greater weight than would the plea of one accused of wrongdoing that others had done the same thing without suffering the consequences of a disregard of those rules of law which exist for the safety and protection of all men, and which should be applied, regardless of apparent or real hardship in the particular cases to which they properly relate.

[2] ID.—LAST CLEAR CHANCE RULE—WHEN APPLICABLE IN RAILROAD CASES.—The "last clear chance" rule never applies in railroad cases unless there is some evidence that the engineer or motorman actually saw the obstruction in time to have avoided the injury by stopping the car or train.

[3] ID.—CROSSING RAILROAD TRACKS—DUTY TO USE POWERS OF OBSERVATION.—One crossing railroad tracks in disregard of a warning gong, where the view is obstructed, driving an automobile in which he carries into peril others than himself, in addition to imperiling the lives of trainmen and passengers on a train which may be wrecked by a collision, has no right to omit to use his own powers of observation to assure himself that there is no danger, nor to rely upon the strict compliance by the servants of the railway company with the speed laws.

[4] ID. — MOTION FOR NONSUIT — SUFFICIENCY OF STATEMENT OF GROUNDS.—In an action for damages for personal injuries a motion for nonsuit on the ground that "the uncontradicted evidence shows contributory negligence on the part of the plaintiff that contributed proximately to the injury" is sufficient to inform both

2. Origin, function, and mode of operation of doctrine of last clear chance, note, 55 L. R. A. 418.

3. Care required of driver of automobile at railroad crossing, notes, Ann. Cas. 1913B, 680; Ann. Cas. 1915B, 767; 21 L. R. A. (N. S.) 794; 29 L. R. A. (N. S.) 924; 46 L. R. A. (N. S.) 702.

the. court and counsel, and fulfills all the requirements of sub-division 5 of section 581 of the Code of Civil Procedure, if the motion on that ground is permissible under the pleadings.

[5] ID.—CONTRIBUTORY NEGLIGENCE—SUFFICIENCY OF ANSWER.—In an action for damages for personal injuries an affirmative plea, by way of a separate defense "that the plaintiff himself did not exercise ordinary care, caution, or prudence in the premises to avoid said accident, and the resulting injuries, if any, by him sustained, and that said accident and the resulting injuries, if any, complained of were directly and proximately contributed to and caused by the fault, carelessness, and negligence of plaintiff in the premises," while subject to special demurrer, is sufficient to sustain a motion for nonsuit, where the plaintiff goes to trial upon it.

APPEAL from a judgment of the Superior Court of Los Angeles County. Charles Monroe, Judge. Affirmed.

The facts are stated in the opinion of the court.

Duke Stone and H. E. Wassell for Appellant.

Frank Karr, R. C. Gortner and E. E. Morris for Respondent.

BRITTAIN, J.—The plaintiff appeals from a nonsuit judgment in an action for the death of his wife, personal injuries to himself, and injuries to the automobile he was driving when it was struck by an electric train at a grade crossing in Los Angeles County. The nonsuit was granted solely on the ground of the plaintiff's contributory negligence. Three questions of law only are presented. The first is as to the technical sufficiency of the motion for nonsuit. Its determination is in no sense involved with the facts of the case. The second is as to the technical propriety of the defendant's pleading. Its determination in no way depends on any facts in the case. The third is whether the evidence of what occurred immediately preceding and up to the very instant of the accident, stated most strongly for the plaintiff, was such that in view of the law applicable to such cases reasonable men could reach but one conclusion concerning the caution or lack of caution of the plaintiff in approaching the railroad track. The determination of this question in no way depends on the deplorable and most distressing results of the accident, and their consideration or

statement could serve only to create a bias above which the judge of the superior court with high regard for the judicial function rose.

[1]   There are certain fundamental rules of law controlling upon the court. The element of sympathy for the suffering, mental or physical, of the plaintiff can be given no weight if he took chances which the law declares can only be taken upon the responsibility of those who take them and so bring themselves and others into peril. The fact that others take or have taken similar chances and have escaped injury cannot be given any greater weight than would the plea of one accused of wrongdoing that others had done the same thing without suffering the consequences of a disregard of those rules of law which exist for the safety and protection of all men, and which should be applied, regardless of apparent or real hardship in the particular cases to which they properly relate. The aphorism that justice should be tempered with mercy gives no warrant to courts to be unlawfully generous with the property of one litigant for the benefit of another. If the law is too hard, it should be changed, but it is not the function of courts to evade it either by disregarding the facts or misapplying established rules of law. In the particular case, if either the facts or the law were different, this court and no doubt the judge of the superior court would be glad if the judgment appealed from could be reversed, but this court is bound, as he was, by the facts, and the law as declared by the legislature and the supreme court of this state.

Stated most strongly for the appellant, and assuming for the present purpose only, that the defendant was in some degree negligent, the facts essential for the determination of this appeal in accordance with the general principles of law which control the actions of this court are as follows: The defendant operates a railroad running from the city of Los Angeles to various places in its vicinity. Its cars and trains are operated by electric power, and, at the place where the accident occurred, over tracks laid upon a private right of way owned by the defendant. Near the scene of the accident, which was some miles outside of the municipal limits of Los Angeles, a more or less closely built-up, but apparently scattering, settlement had sprung up along both sides of the right of way and near to it. To accommodate

traffic from one side of the right of way to the other, crossings were maintained at the streets or roads through this semi-rural settlement, about the length of an ordinary city block apart—250 to 300 feet. Between these cross-streets, and fronting on the right of way, were a few shops, a sidewalk running in front of them, with the distance of seven feet or thereabouts between the outer edge of the sidewalks and the nearest rail of the defendant's tracks. On the right of way there were four parallel tracks running north and south, the two outer tracks being used for local trains, and the two middle tracks for through trains, which were normally operated at a higher rate of speed than the local trains, and which made infrequent stops. Starting from the west side, from which the appellant was driving, the four tracks are designated in order as "south-bound local," "main line south," "main line north," and "north-bound local." The space between the rails of each track was five feet; the distance between the two main tracks, nine and a half feet; between the main line and the local tracks, eight and a half feet. At the right-hand side of the street on the nearest side of the right of way as the plaintiff approached was what is designated as a wigwag, or automatic flagman. It is an electrically controlled device which, when in operation, swings to and fro a warning signal to the continuous clangor of a gong. It is put in operation when an approaching train from the north on either of the first two tracks reaches a point one thousand feet north of the crossing, and it continues ringing until the train has passed the crossing. It is similarly operated by trains from the south. If a train stops within the one thousand feet, the signal continues in operation while the train remains. Trains on one or another of the four tracks were passing every few minutes during the day and the crossing was a stopping place for local trains. The wigwag was, therefore, in operation a great part of each day; as one witness said, "three-fourths of the time."

The plaintiff had lived in the vicinity since 1913 and had ridden on the defendant's trains. He was fifty years of age and had driven an automobile for about two years. He had crossed the tracks at this place once before. In the Ford machine with him were his wife, another lady, and a little girl. As he approached the crossing from the west

there were two other automobiles in front of him. The view
to the north was obstructed by a building at the corner of
the street and the west line of the railroad right of way.
The view to the south was similarly obstructed by a lumber-
yard, in which there were buildings. The appellant's ma-
chine was on the south side of the street, nearest the wigwag,
which he testified he saw in operation. He saw a train going
south on the main line, and a Watts local come north and
stop on the south side of the crossing. In that position it
would have operated the wigwag, and the plaintiff testified
he thought it was the cause of the alarm.

The first two machines came up to the track and stopped
there. The plaintiff stopped as the front wheels of his car
reached the first track. He stopped just an instant and
looked up and down the track both ways. His view to the
south was obstructed by the train which had passed in that
direction. The other two machines had passed on. He
started his machine in the low gear at about the rate of ten
or twelve miles an hour. He could have stopped his ma-
chine, he testified, in five or six, or eight or ten, feet. From
where he stopped to the first rail of the main track north,
where the accident occurred, was twenty-eight feet. It was
about 6 or 6:30 o'clock in the evening in August and was
not dark. A whistle was sounded by some train, but he
did not hear it. He was asked: "Now, after you got up
on the first track when you say you looked south and north,
after you started again, did you ever look any more to the
south?" His reply was: "No, I do not think I did."

No clearer comment on these facts could be made than
that of the judge of the superior court in passing on the
motion for nonsuit. He said: "Mr. Griswold knew about
this crossing. At any rate, whether he had known of it
before or not, the wigwag was going. He approached the
crossing and stopped when the front wheels were on the first
rail. That is the Watts local going south. That was twenty-
seven and a half feet from the track at which the accident
occurred. Starting from the end of the car, he had about
twenty-five feet, after he stopped and looked before he got
to that track. He says himself that he looked to the south
and saw nothing—there was another train about one hun-
dred yards away—he looked to the north and saw nothing.
Counsel did not just comment on it, but he looked and saw

a Watts local there and thought that the Watts local was what was ringing the bell. That, however, was no excuse whatever. Now, then, he himself said that he did not look again. He also said he could have stopped his machine at the speed he was going. First he said in eight or ten feet, and afterward he said he could have stopped it in six or seven feet; but leaving it at eight or ten feet, according to his own testimony when he was on the stand, he only looked when his front wheels were on that Watts track, and said he looked there to the north because that was the first track that he was going to cross. He saw nothing to the north and no obstruction. He was in absolute safety until he got down on to the main line south track. There he should have looked again before he passed the center of the right of way. The law required him to look then. In fact, the law requires a person to keep looking where they are crossing a railroad track. This was a street-car. It is just the same as steam car; they are running on a private right of way. It does not make any difference whether it is in the city or in the country. The court is compelled to grant the motion for nonsuit."

Upon this phase of the case the appellant argues that the question of contributory negligence should have been submitted to the jury generally, and particularly under the legal doctrine of "last clear chance," and he cites cases in which nonsuits have properly been denied, but which do not apply to the facts of this case. **[2]** The "last clear chance" rule never applies in railroad cases unless there is some evidence that the engineer or motorman actually saw the obstruction in time to have avoided the injury by stopping the car or train, and there was no such evidence in this case. (*Bennichsen* v. *Market St. Ry. Co.*, 149 Cal. 18, [84 Pac. 420]; *Thompson* v. *Los Angeles etc. Ry. Co.*, 165 Cal. 748, [134 Pac. 709]; *Tucker* v. *United Railroads*, 171 Cal. 702–705, [154 Pac. 835]; *Starck* v. *Pacific Electric Ry.*, 172 Cal. 277–283, [L. R. A. 1916E, 58, 156 Pac. 51].) **[3]** In the case last cited it was said: "A pedestrian about to cross a street in front of an approaching car has no right to omit any of the precautions which the law demands, nor to rely upon the strict compliance by the servants of the railway company with speed laws." (*Starck* v. *Pacific Elec. Ry. Co.*, 172 Cal. 282, [L. R. A. 1916E, 58, 156 Pac. 53],

citing *Brown* v. *Pacific Elec. Ry. Co.*, 167 Cal. 204, [138 Pac. 1005]; *Griffin* v. *San Pedro etc. R. Co.*, 170 Cal. 772, [L. R. A. 1916A, 842, 151 Pac. 282]; *Hutson* v. *Southern California R. Co.*, 150 Cal. 701, [89 Pac. 1093].)  In this case there is no question, on the nonsuit at least, regarding the speed of the electric train.  This rule of law affecting pedestrians applies with infinitely greater force to one crossing railroad tracks in disregard of a warning gong, where the view is obstructed, driving an automobile in which he carries into peril others than himself, in addition to imperiling the lives of trainmen and passengers on a train which may be wrecked by a collision.  "The general rule that one who attempts to cross a railroad track must reasonably use his own powers of observation to assure himself that there is no danger from approaching trains is clear.  And the rule applies to one from whom a train approaching on a second track is hidden by a train which has just passed."  (*Kock* v. *Southern Cal. Ry. Co.*, 148 Cal. 681, [113 Am. St. Rep. 332, 7 Ann. Cas. 795, 4 L. R. A. (N. S.) 521, 84 Pac. 178]; *Herbert* v. *Southern Pac. Co.*, 121 Cal. 230, [53 Pac. 651]; *Green* v. *Los Angeles etc. Ry. Co.*, 143 Cal. 31, [101 Am. St. Rep. 68, 76 Pac. 719]; *Murray* v. *Southern Pac. Co.*, 177 Cal. 1, [169 Pac. 675].)  Under these rules of law the nonsuit was properly granted, if the motion was technically sufficient in form, and technically proper under the pleadings.

[4]  Concerning the motion for nonsuit, argument is not presented on either side, nor was it necessary.  The second ground stated was that "the uncontradicted evidence shows contributory negligence on the part of the plaintiff that contributed proximately to the injury."  This was sufficient to inform both the court and the counsel, and fulfilled all the requirements of subdivision 5 of section 581 of the Code of Civil Procedure, if the motion on that ground was permissible under the pleadings.

[5]  The defendant's method of pleading contributory negligence is open to criticism, but in view of the entire record it was sufficient to sustain the motion for nonsuit and the judgment.  After the usual denials of the allegations of the complaint, the following appears in the answer immediately preceding the prayer:

"For a further, separate, and distinct answer and defense, defendant alleges: That the plaintiff himself did not exercise ordinary care, caution, or prudence in the premises to avoid said accident, and the resulting injuries, if any, by him sustained, and that said accident and the resulting injuries, if any, complained of were directly and proximately contributed to and caused by the fault, carelessness, and negligence of plaintiff in the premises."

This was an affirmative plea. It was subject to special demurrer, but the appellant went to trial upon it. It is substantially in the form upheld by the supreme court in the Starck case, where the same contention was made and upon the same argument. (*Starck* v. *Pacific Elec. Ry. Co., supra.*)

The judgment is affirmed.

Nourse, J., and Langdon, P. J., concurred.