[S. F. No. 13054. In Bank.—April 16, 1930.]

WILLIAM SHANNON, Appellant, v. NORTHWESTERN PACIFIC RAILROAD COMPANY, Respondent.

Daniel A. Ryan and George F. Snyder for Appellant.

Orrick, Palmer & Dahlquist for Respondent.

SEAWELL, J.—Appeal from a judgment of nonsuit and dismissal.

Plaintiff brought this action to recover damages from the Northwestern Pacific Railroad Company on account of injuries to his person and damage to his automobile caused by the electric train of respondent striking and colliding with said automobile at Greenfield Avenue crossing, a point on said railroad between San Anselmo and the city of San Rafael, at the hour of about 2:50 P. M., January 17, 1925. The section of the general double-track system of said railroad company over which said electric cars were operated at the time said injuries were inflicted extends in a general easterly direction from San Anselmo, crossing said Greenfield Avenue, and terminating at San Rafael.

Appellant had taken his wife for a visit to the home of the Luchessi family, who were near-by neighbors, and was returning from the latter residence by way of Greenfield Avenue, which crosses said railroad at grade, at right angles. Upon reaching the crossing, he observed an electric train on the southerly track moving easterly toward San Rafael. He paused his car at a distance of eight feet from the nearest rail and waited for said train to pass. When the last car passed he proceeded to cross the double tracks and when about halfway across the northerly or second track, the car which he was driving was struck by an electric train coming from the east and badly damaged from the impact. Appellant sustained a broken collar-bone, a fractured rib, painful bruises and a number of minor cuts. Whether the trains were two or three car trains is left in a state of uncertainty. There seems to be a slight curve in the railroad track looking easterly from said crossing, but it was not sufficient to seriously affect visibility for a distance of three or four hundred feet at least. Appellant testified that the eastbound train obstructed his view of the west-bound train and that certain trees and bushes near the track aided also in that respect. He also testified that the only whistle he heard sounded was the signal given by the east-bound train. Two or three other persons were questioned as to the blowing of the whistle, but their testimony was negligible on that issue. Plaintiff testified that upon crossing said tracks he went into

the third gear, which meant that his mileage per hour was from three to five miles, and that he could have stopped his car in a distance of three or four feet. He also testified that the east-bound train was traveling at a high rate of speed. The west-bound train was brought to a stop after the collision within the length of the train plus twenty feet, that is to say, the rear car was twenty feet past the point where the automobile was struck.

Appellant had resided for twenty-nine years within a very short distance of the crossing in question. He testified that he had crossed the track at that point more than one hundred times and was so familiar with the train schedules that passing trains served him as a timepiece. He gave the impression that it was unusual for trains to pass at the point in question, but he produced testimony which clearly established the contrary fact.

We have examined the entire record in the case and find nothing therein that would justify us in reversing the judgment. The learned trial judge, in passing upon the insufficiency of the evidence to sustain a judgment for appellant, used the diagram or map prepared by the plaintiff to illustrate his position and said:

"And after Mr. Shannon did start up, until he got to the south rail, there is no question at all if he looked down there he could see three or four hundred feet down the track. And then going three to five miles an hour, he could have stopped, because anywhere along here would have been a place of safety. This track, the testimony shows, is straight for several hundred feet. To the west there is no indication of any train coming, or due or in danger of coming. So it seems to me if Mr. Shannon came out this far on the track and stopped and looked—without stopping, if he had looked—he would have seen the train approaching from the east. . . . So it looks to me as though, much as I dislike to do it, I will have to grant the motion. [After discussion.] Well, I do not think I could look at it any other way except he was guilty of contributory negligence."

The court further stated that by the exercise of reasonable care on the part of appellant the accident would have been avoided. Upon an examination of the record, includ-

ing the transcript of testimony, we find no grounds upon which its judgment may be overthrown.

Judgment affirmed.

Curtis, J., Preston, J., Waste, C. J., Shenk, J., and Richards, J., concurred.