[Civ. No. 175. Fourth Appellate District.—November 9, 1931.]

JACOB P. VILHAUER, Appellant, v. PACIFIC ELECTRIC RAILWAY COMPANY (a Corporation), Respondent.

Homer N. Boardman for Appellant.

Frank Karr, E. E. Morris and C. W. Cornell for Respondent.

BARNARD, P. J.—This is an action to recover for injuries and loss sustained by the plaintiff in a collision between an automobile driven by him and an electric car operated by the defendant. The collision occurred about 5 o'clock P. M. on April 20, 1926, near the town of Cypress, in Orange County, at a point where a paved highway crosses a double track used by the railway company. An automatic signal which "wigwagged" and rung a bell upon the approach of a car or train was installed at this crossing, and as the plaintiff approached he observed that this signal was working. He also saw a north-bound car about 150 feet away approaching the crossing on the track nearest to him. He stopped his car about fifteen feet from the nearest track and waited for this car to pass. He then started forward and when he had reached the second track his machine was struck by a south-bound car, causing the injuries described in the complaint. The case was tried with a jury and at the conclusion of the plaintiff's evidence a motion for a nonsuit was granted upon the ground that the plaintiff was guilty of contributory negligence. From the judgment which followed, this appeal is taken.

The principal question before us is whether contributory negligence on the part of the plaintiff, as a matter of law, is shown by the evidence. The appellant testified that he had passed the crossing in question twice every day for about three weeks; that as he approached the crossing on this occasion, he saw the wigwag working and saw a north-bound car about 150 feet away approaching at twenty-five or thirty miles an hour; that he stopped his car about fifteen feet from the first track and that the place where he was sitting was some four or five feet from the front end of his automobile; that when he stopped he looked both ways and saw only the one car, which he let go by; that when the north-bound car was about 200 feet past the crossing he started forward, proceeding in low gear at a speed of about four or five miles an hour; that he looked before he started on and "couldn't see nothing"; that he had good brakes and could have stopped in from six inches to a foot; and that there were no buildings or trees to obstruct his view. The appellant testified as follows:

"Q. After the car traveling north went by just tell the jury what you did.

"A. I started on slowly and when I got in between the two tracks I looked the other way and couldn't see nothing.

"Q. When you say you 'looked the other way', which way did you look?

"A. I looked both ways.

"Q. And couldn't see nothing?

"A. And I listened.

"Q. Could you hear anything?

"A. I didn't hear nothing.

"Q. When you looked to the right did you look up the track?

"A. I looked up the track.

"Q. Was there anything there at that point that in any manner obstructed your view?

"A. Well, the poles.

"Q. Where were they located?

"A. They was right in the middle of the track.

"Q. You mean between the two tracks?

"A. Between the two tracks, yes.

"Q. Did you at any time see or hear the car that hit you?

"A. No, sir. . . .

"Q. Then what kept you from seeing this train that was coming towards Santa Ana, the one that hit you?

"A. It must have been the poles.

"Q. What did you see when you looked up?

"A. I didn't see nothing.

"Q. What kept you from seeing anything?

"A. Well, either the car or the poles.

"Q. Well, if the car was 200 feet away that wouldn't keep you from seeing the car coming down here any time, would it?

"A. I don't know.

"Q. Well, there was nothing but that car or those poles between the tracks, is that right? That is the only thing that would keep you from seeing this train coming towards Santa Ana, was it?

"A. Yes, sir. . . .

"Q. Now, Mr. Vilhauer, as you came up here did you see this wigwag?

"A. Yes, sir.

"Q. Was it working?

"A. Yes, sir.

"Q. It was working while you were standing there, wasn't it?

"A. Yes, sir.

"Q. It was working when you got hit, wasn't it?

"A. I don't know.

"Q. You went on by and didn't pay any more attention?

"A. I suppose it was. I don't know whether it was. I never looked.

"Q. But it was when you looked when you came up?

"A. Yes."

A diagram was introduced, showing that the trolley poles in question were between the two tracks and that they were from 100 to 110 feet apart. The appellant also introduced a number of photographs showing the tracks and poles in question from various views, including one view from the point where appellant stopped his machine and another view from the point between the two tracks, where appellant looked the second time. There was evidence that the poles were from eighteen to twenty inches in circumference, and it was stipulated that the electric car causing the damage was fifty-five feet six inches long, nine feet four inches wide, twelve feet nine inches high, and weighed 85,000 pounds empty. There was evidence that the wigwag was working when the appellant stopped, when he started to cross the track, and when the collision occurred. It appears that the appellant was sitting about twenty feet from the first rail of the first track when he stopped; that the rails of the first track were about five feet apart; and that the two tracks were about nine feet apart. It thus appears that the appellant traveled about thirty-four feet from the time he started forward until he was struck. An eye-witness who was standing near the crossing in question testified that when he first saw appellant's automobile it was stopped; that when the rear end of the north-bound electric car had gone by ten or fifteen feet the appellant started across the track; that the north-bound and south-bound electric cars passed each other about 200 feet from the crossing; that the wigwag was working; and that the appellant proceeded across the crossing at about one or two miles per hour.

■ It is a general rule that the driver of an automobile, before crossing a railroad track, must stop, look and listen, and where the circumstances make it necessary, must alight and walk ahead far enough to enable him to see whether a train is approaching. (*Young* v. *Pacific Elec. Co.*, 208 Cal. 568 [283 Pac. 61].) This strict rule has been somewhat modified in cases where crossings are protected by automatic signals which give a warning, in addition to that given by the tracks themselves, of the approach of a train. Where such warning devices are installed, while a plaintiff may not absolutely rely upon them, a lesser degree of care is required than where such devices are not present. In a case where such a warning device is installed but is not working on a given occasion, and where some precaution has been taken by a plaintiff for his own protection, the question whether the care used was sufficient under the particular circumstances is usually one for the jury (*Ogburn* v. *Atchison, Topeka & Santa Fe Ry. Co.*, 110 Cal. App. 587 [294 Pac. 491], and cases there cited). While a lesser degree of care is required where a traveler depends in part upon a signal which in a particular case happens not to be working, and while, where some precaution is taken by a plaintiff under such circumstances, the question as to the sufficiency of the care used is usually one for the jury, a somewhat different situation may arise where the traveler proceeds across a railway track when the automatic signal is working and indicating the presence of a train within the danger zone. In such a case the mere fact that some precaution has been taken by a plaintiff, does not necessarily require that the sufficiency thereof must be submitted to the jury. For a traveler to proceed across the tracks against the warning of such a signal, if not negligence in itself, would at best seem to call for the exercise of a high degree of care on the part of the traveler. In such a case, the care actually used may be so disproportionate to the care required and called for by the circumstances as to be held insufficient as a matter of law. We think such a situation appears in the case before us.

■ The evidence is undisputed that the wigwag signal was working when the appellant started up after stopping his machine, and that it was working when the collision occurred. It is a fair inference from the evidence that it was working all of the intervening time. If it be considered

that the appellant exercised some care in stopping his car and looking both ways, it would appear that the care used was not sufficient to meet the plain requirements of the situation, since he did not again look at the signal before starting forward, and after starting did not look up the track until he had arrived at a point between the two tracks, at which time the front end of his machine would be upon the second track, and all of the time he was in fact proceeding in the face of the continued warning of the oscillating signal and ringing bell. It would almost appear that he used no care whatever with reference to the second track and the electric car which struck him, since he was familiar with the crossing, knew there were two tracks and that trains passed both ways, and he did not pay any attention to the signal after the first car passed and did not look up the track from the time he started until he was practically upon the second track. While he now contends that he was unable to see, from his own evidence it appears that he paid no attention to the warning signal and that he did not look after he started forward until it was too late. If it were a fact that appellant's view was obstructed by the trolley poles, it is also a fact that he proceeded in spite of the operation of the signal. That he may have thought the operation of this signal was still caused by the car which had just passed, was no excuse. (*Griswold* v. *Pacific Elec. Ry. Co.*, 45 Cal. App. 81 [187 Pac. 65].) But it does not appear to be a fact that appellant's view was obstructed. While he testified that he looked just before he started his car and could see nothing, his only explanation of why he could not see is that it must have been the poles, or that it was either the passing car or the poles. It is undisputed that the electric cars passed each other 200 feet beyond the crossing and if, as appellant says, he did not start his automobile until the passing car was 200 feet beyond the crossing, it was not the passing car that obstructed his view. It appears that the track was straight for a considerable distance, and that there were only one or two poles within 200 feet of the crossing and it not only seems impossible that these could have obscured his vision of a car of that size but it conclusively appears from the photographs introduced in evidence by the appellant that these poles could not have obscured his vision during the time he was approaching

and passing the first track. It therefore appears that the approaching car was visible during the time it was covering the 200 feet and during the time the appellant was approaching and crossing the first track. This fact, with the fact that the appellant did not look in that direction during that time, coupled with the fact that he was proceeding against the warning of the wigwag and the bell, conclusively shows that the care used, if any, was so disproportionate to the care called for by the circumstances that it must be held, as a matter of law, that the appellant was guilty of contributory negligence. If he had looked up the track during the time he was covering the thirty-four feet he traveled, he would have seen the car and, according to his own testimony, he could have stopped at any time within one foot. Taking the view of the evidence most favorable to the appellant, he proceeded against the warning signal and as he proceeded he did not even look to see whether the view was obstructed or not. While he claimed he looked after it was too late and that at that point his view was obstructed by the poles, his testimony on that point is not very satisfactory and, in addition, it appears from the actual photographs that this could not be true. In any event, no excuse is offered for not having looked during the intervening thirty-four feet; there is no testimony that his view was obstructed during that time; it is apparent from the evidence that it was not, and the only reasonable conclusion is that the appellant assumed that the continuance of the warning signal was caused by the passing of the first car, and that he proceeded without paying any attention to the approaching car on the other track. In any view of the evidence, we think the appellant was guilty of negligence which contributed to his injuries.

The appellant relies on the case of *Forbell* v. *Pacific Elec. Ry. Co.*, 200 Cal. 718 [254 Pac. 890]. In that case the court held that the evidence indicated that the electric car was not discernible until the bus, which figured in the collision, was well upon the tracks of the defendant railway company. Under such circumstances, a different rule was applied. A number of other cases are cited by appellant where the view of the plaintiff was obstructed by box-cars and other obstructions, and in which it was held that since the plaintiff had taken some precautions, the question of whether sufficient

care was used was properly submitted to the jury. A different situation is here presented where, if the appellant's view was obstructed in the beginning, it was by a rapidly moving car which would soon remove itself as an obstruction to his view, and where the evidence shows neither an obstruction thereafter nor any effort on the part of the appellant to ascertain whether a second electric car was coming after the time he started forward. Under the circumstances here shown, we think a nonsuit was properly granted by the trial court. (*Shannon* v. *Northwestern Pac. R. R. Co.*, 209 Cal. 303 [287 Pac. 91].)

The appellant complains of a ruling of the court in excluding an offer of evidence to the effect that the wigwag signal installed at this crossing would continue to operate after a train had passed for a distance of about 200 feet. The only purpose of the evidence offered would appear to be to justify the appellant in assuming that the wigwag was still working because of the passing of the first electric car. The fact sought to be proved was proved by other evidence, since it was established that the wigwag actually did work when the passing car was 200 feet away, at which point it passed the other electric car which was itself 200 feet away. Not only was there no offer to prove that the fact sought to be established was known to the appellant but the appellant himself admitted that when he proceeded, he did not even notice whether the wigwag was working or not. No prejudicial error appears in the ruling.

Another claim is made that the court was in error in sustaining an objection to certain offered proof. The testimony offered went only to the question of negligence on the part of the defendant and need not be here considered since on this appeal negligence on the part of the defendant may be assumed.

For the reasons given the judgment is affirmed.

Marks, J., and Jennings, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 3, 1931, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 7, 1932.