[Civ. No. 8623. First Appellate District, Division One.—July 29, 1933.]

A. V. CHRISTIANSON, Appellant, v. SOUTHERN PACIFIC COMPANY (a Corporation) et al., Respondents.

A. V. CHRISTIANSON, as Administrator, etc., Appellant, v. SOUTHERN PACIFIC COMPANY (a Corporation) et al., Respondents.

H. J. Bischoff and Louis T. Fletcher for Appellants.

Louis Oneal and A. G. Shoup for Respondents.

KNIGHT, J.—Appellant's wife, Rose Mary Christianson, and his minor daughter, aged six, were killed instantly in a collision between a train operated by the respondent railroad company . and an automobile driven by Mrs. Christianson, which occurred about 9 o'clock on the morning of December 3, 1930, in Palo Alto, at the Churchill Avenue crossing; and by reason thereof appellant brought these two actions for damages. They were consolidated for trial and at the conclusion of the evidence the trial court held as matter of law that negligence on the part of appellant's wife contributed proximately to the happening of the accident, and accordingly the jury was instructed to find for the respondents. Such verdicts were returned and from the judgments entered thereon this appeal is being prosecuted.

There is no conflict as to the essential facts. The Christiansons lived in Palo Alto, on the west side of and approximately 200 feet from the main line double tracks of said company, where the accident occurred; and from their home they had a clear view of said tracks and knew of the operation of trains thereover. It was customary for Mrs. Christianson to drive her daughter to school every morning, and in order to reach the school it was necessary to cross the railroad tracks at the Churchill Avenue crossing. At this crossing the railroad company maintained an automatic wigwag signal, which, besides swinging forward and back, rang a bell and displayed a red light as a warning of the approach of trains from either direction. The tracks on both sides of the crossing were straight and the view thereof unobstructed for a long distance. A south-bound passenger train (number 78) and a north-bound passenger train (the "Lark") passed each other every morning usually near the Churchill Avenue crossing; and Mrs. Christianson was familiar with all these conditions. On the morning of the accident there was a heavy, low fog, but, as will hereinafter appear, the approach of the north-bound train which collided with the automobile could be seen for a distance of at least

200 feet from the crossing. As Mrs. Christianson drove up to the crossing the wigwag signal was swinging, the bell operated thereby was ringing and the red light was displayed, and she brought her automobile to a stop near the tracks, on the westerly side thereof. About the same time two other automobiles, one driven by Herbert E. Browning and the other by Professor Harris J. Ryan of Stanford University approached the tracks from the opposite (easterly) direction and stopped on the easterly side thereof, diagonally across from Mrs. Christianson; and almost immediately the south-bound train, number 78, passed by. As soon as it had cleared the crossing and while the automatic warning signal was still in full operation, Browning crossed the tracks. Mrs. Christianson attempted to do likewise, but as her automobile reached the easterly track it was struck and demolished by the oncoming north-bound train, and Mrs. Christianson and the child were killed.

The foregoing facts were established mainly by the testimony of Browning, Professor Ryan and a Mr. Burke. In this regard, Browning testified that as soon as the south-bound train passed he started across the tracks; that when his automobile reached the first rail he heard a train whistle and looking to the south he saw the headlight of the engine of the north-bound train as it emerged from the fog; that he continued on, and as he reached the other side of the right of way he passed Mrs. Christianson's machine which had not then started across the tracks; that almost immediately after passing her he heard a crash, and looking in the "rear-view" mirror on the windshield of his car he saw flames underneath the train; that he stopped at once and went back to the scene of the accident. Professor Ryan testified that he saw the automobile operated by Mrs. Christianson drive up to and stop on the opposite side of the crossing just as the south-bound train approached the crossing, and that about the same time the car operated by Browning drove up alongside of him and stopped; that as soon as the south-bound train cleared the crossing, Browning started up and crossed the tracks; and that although the crossing signal was still in full operation, Mrs. Christianson's car "was getting under way, with some hesitation", to cross the tracks; that at that moment he heard the whistle of the north-bound train, and looking to the south saw the head-

light of the engine as it came out of the fog; that the engine was then about 200 feet south of the crossing; and that immediately following the crash occurred. Burke's testimony was substantially the same as that given by Professor Ryan. He was approaching the crossing in an automobile from the easterly side, on Churchill Avenue, as the south-bound train passed. He saw the Browning car cross the tracks immediately after it had passed, and also saw Mrs. Christianson start across from the other side, after the whistle of the north-bound train had been sounded and the headlight of the engine appeared through the fog, and notwithstanding that the automatic warning signal at the crossing was in full operation. He further stated that when he first saw the headlight of the engine through the fog the train was just passing Colorado Avenue, which was 400 feet from the Churchill Avenue crossing.

There were two other witnesses to the accident, one of whom merely saw the impact from the window in a house some distance from the crossing. However, he saw and heard the operation of the automatic warning signal at the crossing after the south-bound train had passed, indicating the approach of the north-bound train. The other witness was a considerable distance from the crossing when the impact took place, his testimony as to the distance being uncertain. He was driving an automobile in a southerly direction toward the crossing along a street on the easterly side of and running parallel with the tracks. He stated that he heard the train whistle and saw the headlight of the engine as it came out of the fog, and he, too, fixed the location of the train at that time at some distance beyond the point fixed by Professor Ryan.

The speed of the train at the time of the accident was not definitely established. Its average running time between San Jose and Palo Alto was between 40 and 50 miles an hour. However, the locomotive fireman, who was watching the track ahead from the left side of the cab, testified that when they were about 150 feet south of the crossing he saw the Christianson car start across the track in front of the train; that he instantly called to the engineer to "hold the train", meaning to shut off the steam and apply the emergency brakes; that this was done instantly, bringing the train to a stop as soon as possible. Both the fireman

and the engineer corroborated the testimony of the other witnesses that on approaching the crossing the whistle was sounded, stating that two long blasts, one short and one long, were given; furthermore, they stated that the locomotive bell was ringing constantly from the time the train left San Jose.

In view of the foregoing undisputed facts, the trial court was fully justified, in our opinion, in holding as matter of law, that the accident was proximately caused by the negligence of appellant's wife in failing to give heed to the obvious signals of danger there present. As shown by the positive, uncontradicted testimony of Browning, Professor Ryan and Burke, she started to cross the tracks after the engineer of the north-bound train had sounded the whistle more than an eighth of a mile south of the crossing, and after the headlight was plainly visible from the crossing. And even accepting the theory that she did not hear the whistle, or if she did hear it, that she believed it was sounded by the south-bound train, it is evident that she did not take the precaution to look in that direction before attempting to cross the tracks, because manifestly if she had so looked, she, like the witnesses mentioned, would have seen the headlight of the engine. Moreover, and aside from the warnings given by the train whistle and the headlight, the evidence shows positively that she attempted to cross the tracks in the face of the warning given by the full operation of the automatic crossing signal.

The legal rules by which the conduct of a traveler about to cross a railroad track are to be governed are well established by a long line of decisions in this state, and it seems wholly unnecessary to restate or discuss them here. Most of the cases upon the subject are reviewed at length in the recent case of *Koster* v. *Southern Pac. Co.*, 207 Cal. 753 [279 Pac. 788]; and a still later case involving a situation more closely resembling the present one in its facts is *Vilhauer* v. *Pacific Electric Ry. Co.*, 118 Cal. App. 240 [4 Pac. (2d) 960]; and when those rules are applied here it becomes manifest that the trial court did not err in holding as matter of law that the contributory negligence of appellant's wife bars recovery in both actions.

Appellant emphasizes the point that the view of the approaching train was obscured by the heavy fog, all of

which may be true; but it has been held in substance that where, as here, a traveler is familiar with a railroad crossing and the operation of trains thereover, and his view is obscured by a dense fog, he should observe even greater caution in crossing the tracks than he would if the atmosphere were clear; and that damages for injuries sustained may not be recovered, if, under such conditions, he attempts to cross without the exercise of due caution to look and listen for approaching trains. (*Hoffman* v. *Southern Pac. Co.*, 84 Cal. App. 337 [258 Pac. 397]; Id., 101 Cal. App. 218 [281 Pac. 681].)

The judgment in each action is affirmed.

Tyler, P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 28, 1933, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 25, 1933.