[Civ. No. 16723.   First Dist., Div. Two.   July 16, 1956.]

GENEVA CHING (Yee), Appellant, v. EUGENE DY FOON, Respondent.

White & White for Appellant.

Dana, Bledsoe & Smith, Bledsoe, Smith, Cathcart & Johnson and Joseph W. Rogers, Jr., for Respondent.

KAUFMAN, J.—This is an appeal from a judgment in favor of defendant and respondent after jury verdict in a personal injury action by a guest for injuries received in an automobile accident in Los Angeles on September 7, 1951.

Appellant, Geneva Ching, Esther Wong, another guest, and Eugene Dy Foon, the driver and owner of the automobile in which the three were riding, were on their way from Farmers' Market to Knott Berry Farm, when respondent fell asleep at the wheel and crashed into the rear of another vehicle which had stopped for a stop signal at an intersection on Figueroa Street. Appellant, riding beside the respondent, was asleep when the accident happened. She was thrown against the dashboard sustaining severe facial cuts about the mouth and chin and the loss of several teeth.

Respondent Dy Foon had been dating appellant occasionally for some months prior to this trip. Appellant, who was to attend a bowling tournament in Los Angeles, left San Francisco in the company of Mrs. Wong and Elsie Chang, in respondent's car prior to the Labor Day week end. They visited San Diego and Tia Juana before Labor Day, attended the bowling tournament on Labor Day in Los Angeles, and probably on Tuesday. On Monday or Tuesday evening they went to a dance. Leaving Los Angeles Wednesday evening they drove at night, reaching Las Vegas, Nevada, in the morning. Respondent did most of the driving but was occasionally relieved by Elsie Chang. The evidence does not show whether or not respondent slept while Elsie drove, but no stops were made for sleep. Elsie rested in the car while the other three walked around town. They then drove to Hoover Dam where

they rested in a park for a couple of hours. Appellant believed that they all took naps.

In the evening of the same day, Thursday, September 6, the group headed back for Los Angeles, respondent doing all the driving on this trip. Respondent stopped the car once to sleep. Appellant did not know how long the stop had been as she awoke as the car started up again. They arrived in Los Angeles at about daylight Friday.

After leaving the women at their quarters, respondent went to his sister's home. Some time later in the morning he took a girl friend of appellant's to work, drove around Los Angeles with appellant, picked up appellant's girl friend, and went with them to the Farmers' Market for lunch. They left the Farmers' Market at about 2 p. m. to go to Knott Berry Farm. Appellant had asked respondent to take her there as she had seen some slippers there which she wanted to buy. She asked respondent if he was tired or sleepy because she thought he would be, saying they could have dinner first if he wished. He said no he wasn't, that he could do it. Appellant felt wide awake at the time, but was asleep when the accident happened.

Respondent testified that appellant and Mrs. Wong asked him twice if he was sleepy on leaving Farmers' Market, that he was not at that time, having just had a cold drink. He nodded his head a couple of times in drowsiness prior to the accident, but shook himself and felt awake and able to drive.

Respondent pleaded the defense of assumption of risk. A special demurrer to this plea was overruled. At the commencement of the trial, appellant's motion to strike the special defense was denied and instructions on this defense were given to the jury.

The complaint herein filed August 22, 1952, alleged that on September 7, 1951, at about 3:30 p. m., plaintiff was a guest in defendant's automobile which was being operated in a southerly direction on Figueroa Street in Los Angeles, that defendant caused said automobile to collide with an automobile ahead of him which had stopped in compliance with an automatic stop signal; that the collision and the injuries sustained resulted from defendant's wilful misconduct in operating the automobile in that "knowing he was in a drowsy and sleepy condition, and knowing he was napping or dozing at the wheel and knowing to continue to drive in said drowsy condition was a dangerous thing to do, he continued to drive said automobile with reckless disregard of

the consequences and recklessly and wantonly took a chance with the knowledge that probable serious injury would result to plaintiff from said misconduct.'' The answer denied generally the allegations of the complaint and set up the following affirmative defense: ''This defendant alleges that plaintiff Geneva Ching voluntarily rode in the automobile mentioned in said complaint, and voluntarily assumed all of the risks [incident] to riding in said automobile at the time and place in question and under circumstances existing when she elected to ride with defendant.''

Appellant asserts that error was committed by the trial court in denying her motion to strike the affirmative defense, since no facts were pleaded showing appellant's knowledge of the danger, or her appreciation of the danger, or that the danger known and appreciated by appellant was the proximate cause of appellant's injuries.

It is well established that assumption of risk and contributory negligence may be pleaded as affirmative defenses in wilful misconduct cases. (7 Cal.Jur.2d 239, § 340, and cases there cited.) If the plea in question was good against a general demurrer, it was good against a motion to strike, for even if the special demurrer had been improperly overruled, granting the motion to strike in such case would be equivalent to sustaining a special demurrer without leave to amend, a ruling which is unquestionably an abuse of discretion. (*Zakaessian* v. *Zakaessian,* 70 Cal.App.2d 721 [161 P.2d 677] ; *Duffy* v. *Duffy,* 82 Cal.App.2d 203 [186 P.2d 61].)

The defense is good against general demurrer for it alleged that she voluntarily rode in the automobile mentioned in the complaint, and voluntarily assumed all of the risks incident to riding in said automobile at the time and place in question and under the circumstances existing when she elected to ride with defendant. The only risk alleged in the complaint is respondent's driving in a drowsy condition. Therefore the answer sufficiently advised appellant that respondent would attempt to prove that appellant assumed the risk of respondent's knowingly driving in a sleepy condition.

Under the present liberal rules of pleading, negligence may be alleged in very general terms, the pleader alleging only the act which caused injury, stating that it was done negligently. (*Stephenson* v. *Southern Pac. Co.,* 102 Cal. 143, 148 [34 P. 618, 36 P. 407] ; *Griswold* v. *Pacific Electric Ry. Co.,* 45 Cal.App. 81, 87 [187 P. 65].)

It also appears that no prejudicial error could have re-

sulted from the overruling of the special demurrer. [5] Such a demurrer will not be sustained when the allegations make sufficiently clear the issues which the adverse party must meet. (*People* v. *Lim,* 18 Cal.2d 872 [118 P.2d 472]; *Brea* v. *McGlashan,* 3 Cal.App.2d 454 [39 P.2d 877].) No reasonable person could be in doubt as to what risk respondent had alleged that appellant had assumed since the complaint alleged only one—knowingly driving while sleepy. On trial, this was the only risk respondent attempted to prove appellant had assumed under this defense. ■ Furthermore, a demurrer for uncertainty will not be sustained where the facts claimed to be uncertain or ambiguous are presumptively within the knowledge of the demurring party. (*Merlino* v. *West Coast Macaroni Mfg. Co.,* 90 Cal.App.2d 106, 108 [202 P.2d 748].)

■ Appellant complains that there is no statement in the defense that appellant knew of and appreciated the risk. Pleading that she voluntarily assumed the risk of respondent's knowingly driving in a sleepy condition necessarily implies these elements. ■ It is not necessary to plead all the evidentiary facts. ■ Although the defense could have been more specifically stated, no prejudice could result in overruling the demurrer where the facts were all presumptively within the knowledge of the demurring party. (*Merlino* v. *West Coast Macaroni Mfg. Co., supra; Salas* v. *Whittington,* 77 Cal.App.2d 90 [174 P.2d 886]; 2 Witkin, California Procedure, 1599.)

Respondent's counsel offered at the opening of the trial to amend his defense, but appellant's counsel demanded a 10-day continuance in order to plead that the defense was sham if leave to amend should be granted by the court. The court denied the continuance but assured appellant that additional time would be granted her at any time during trial if she should be surprised and need time to obtain additional evidence. No such request was made.

■ It is contended that appellant was entitled to a directed verdict in her favor. Under the evidence in this case it was a factual question whether or not respondent was guilty of wilful misconduct. It was also a factual question as to whether or not appellant had assumed the risk of respondent's misconduct, if any. We know of no case which holds as a matter of law that it is wilful misconduct to continue to drive after having experienced ''premonitory symptoms'' of sleep. It has been held that where a driver goes to sleep at the wheel

of an automobile and after awakening continues to drive and an accident results from his falling asleep again, it is a question of fact for the jury as to whether the driver was guilty of wilful misconduct in thus continuing to drive. (*Erickson* v. *Vogt,* 27 Cal.App.2d 77 [80 P.2d 533]; *Pennix* v. *Winton,* 61 Cal.App.2d 761 [143 P.2d 940, 145 P.2d 561]; *Halstead* v. *Paul,* 129 Cal.App.2d 339, 340 [277 P.2d 42].) It was therefore not error to refuse to direct a verdict in appellant's favor.

It may be said that the evidence was also sufficient to support a finding that appellant had assumed the risk of respondent's conduct, for the jury could well have inferred from the evidence herein that appellant, because of her knowledge of the group's activities since they had left San Francisco, and because of her questioning of respondent as to whether or not he was tired prior to the commencement of this drive, fully realized the danger of driving in Los Angeles traffic in a sleepy condition. They could also infer that because respondent had been dating appellant, he would try to complete the drive which was being made at her request instead of stopping in the middle of the afternoon on a busy city street to take a nap and that she realized this. There was also evidence from which it would have been proper to infer contributory negligence on the part of appellant, for she promptly went to sleep instead of observing respondent's driving after having earlier expressed concern that he might be fatigued. However, contributory negligence was not pleaded as a defense, nor were any instructions given on the subject.

Appellant attacks the instructions given by the court on the doctrine of assumption of risk as being erroneous and prejudicial to her.

The following instructions were given:

"There is a legal principle commonly referred to by the term 'assumption of risk,' which now will be explained to you:

"One is said to assume a risk when she freely, voluntarily and knowingly manifests her assent to dangerous conduct or to the question of maintenance of a dangerous condition, and voluntarily exposes herself to that danger, or when she knows that a danger exists in either the conduct or condition of another, or in the condition, use or operation of property, and voluntarily places herself or remains within the area of danger.

"It should be noted that to bar recovery assumption of risk must be voluntary. To be voluntary these two factors

must be present: First, the person in question must have actual knowledge of the danger. Second, she must have freedom of choice. This freedom of choice must come from circumstances that provide her a reasonable opportunity, without violating any legal or moral duty, to safely refuse to expose herself to the danger in question.

"But assumption of risk, if it meets with the requirements of the law as stated to you, will bar recovery for damage although it plays no part in causing the accident except merely to expose the person to the danger.

"In determining whether a person assented to or assumed a risk so as to bar recovery by her of damages for injury, you may consider her age, experience and capacity, along with all the other surrounding circumstances as shown by the evidence."

The trial court refused to give an instruction offered by appellant that "There is no issue in the case that the plaintiff assumed any risk that was the proximate cause of the injuries complained of by her, and such issue may not be considered by you." This instruction would have told the jury that there was no defense of assumption of risk in the case. It was therefore correctly refused.

As to the instructions given, they are in themselves correct instructions. These instructions were apparently all taken from BAJI 207-207D. Appellant argues that regardless of the correctness of the instructions themselves, if they find no support in the evidence it was error to give them. ██ She contends that there is no evidence that appellant had any knowledge of the risk of respondent's continuing to drive, knowing that he was dozing or that she appreciated the risk of his driving in this condition. However, it may be said that the very fact that she questioned him as to his condition before commencing the drive, is evidence from which her knowledge of appreciation of such a risk may be inferred. In *Hayes* v. *Richfield Oil Corp.*, 38 Cal.2d 375 [240 P.2d 580], it is said that "Where the facts are such that the plaintiff must have had knowledge of the hazard, the situation is equivalent to actual knowledge, and there may be an assumption of risk; but where it merely appears that a person could or should have discovered the danger by the exercise of ordinary care, the defense is not assumption of risk but contributory negligence." The person must have knowledge of the condition creating the hazard (*DeGraf* v. *Anglo California Nat. Bank*, 14 Cal.2d 87, 100 [92 P.2d 899]) and it

appears that there was evidence in this case from which such actual knowledge could be inferred. (And see *Prescott* v. *Ralphs Grocery Co.*, 42 Cal.2d 158, 162 [265 P.2d 904].)

Actual knowledge may be inferred from circumstantial evidence. (*Gantner & Mattern Co.* v. *Hawkins,* 89 Cal.App. 2d 783, 786 [201 P.2d 847].) The instruction refers to exposure of appellant to the danger in question. The only danger alleged in the complaint was that of respondent falling asleep while driving, and all of the evidence was to the effect that this was the sole cause of the accident. Where there was only this one risk in the case, the jury could not have been misled.

Appellant contends that the instructions herein told the jury that if plaintiff knows of a danger and voluntarily places herself or remains within the area of danger, she may be deemed to have assumed the risk even though she does not appreciate the risk involved. She cites Prosser on Torts, page 385, to the effect that a defect and the danger arising therefrom are not necessarily identified, and a person might know of one without appreciating the other. However, since the jury were told that appellant must have actual knowledge that a danger exists in either the conduct or condition of another, or in the condition, use or operation of property, the instruction appears to meet Prosser's requirement. The instruction does not tell the jury that it would be sufficient that appellant knew of respondent's lack of sleep in order for her to assume the risk, but that she must know of the danger arising from that condition. Appellant emphasizes the fact that the jury was not told that appellant must "appreciate the risk." Many of the cases discuss the fact that plaintiff must have knowledge and appreciation of the risk. However, the term "actual knowledge of the danger" expresses the same thought as "appreciation of the danger." None of the model instructions given on assumption of risk in BAJI use the term "appreciation" of the risk.

One of the instructions given above was in the main, similar to BAJI 207, but did not include the last paragraph of the instruction there given which states that one "who thus assumed a risk is not entitled to recover for damage [caused [him] [her] without intention and] which resulted from the dangerous condition or conduct to which [he] [she] thus exposed [himself] [herself]." It appears that the omission of this paragraph, would make the instruction more favorable to appellant. However, appellant argues that by leaving this

out, the jury was not instructed that the risk assumed must be the proximate cause of appellant's injuries. It has been previously pointed out that the only risk involved in the entire case was respondent's continuing to drive while falling asleep at the wheel.

■ Error is alleged in the giving of the instruction, quoted *supra,* to the effect that assumption of risk will bar recovery although it plays no part in causing the accident except merely to expose the person to the danger. The instruction is correct, and was properly given herein.

Appellant complains that the instructions on burden of proof were repetitious, and that they failed to point out to the jury that the burden of proof on the defense of assumption of risk was on respondent. She cites numerous authorities to the effect that a litigant is entitled to have instructions given on any and all theories which are supported by evidence in the case. But appellant offered no instruction on the subject, no doubt for the reason that she refused to recognize that assumption of risk was in the case. ■ Since the instructions on burden of proof are correct, appellant cannot complain since she did not ask for further specific or qualifying instructions on the subject. (24 Cal.Jur. p. 796, § 74.)

■ The court refused the following instruction offered by appellant: "Subject: Contributory Negligence, not at Issue. I instruct you that there is no issue in this case as to the acts or conduct of the plaintiff, and you may not consider such in your determination as to the proximate cause of the accident complained of." The instruction is obviously not a proper instruction to simply tell the jury that contributory negligence is not an issue. The statement that there is "no issue in this case as to the acts or conduct of the plaintiff" would eliminate the defense of assumption of risk from the jury's consideration, for plaintiff's acts and conduct were directly involved in that defense. The instruction was therefore properly refused.

■ It is urged that the court withdrew from the jury appellant's theory of the case by refusing a certain instruction but a reading of the record discloses that the requested instruction was confusing and ambiguous. No error exists in this connection.

■ Numerous errors are claimed to exist in the instructions given on wilful misconduct. Appellant takes exception to the language in certain instructions stating that wilful misconduct is conduct under circumstances which show de-

fendant's knowledge that *serious* injury will probably result or a reckless disregard of the possible results. She says that this tells the jury that the burden of proof is on appellant to prove that she suffered "serious" injury, and that no definition of serious was given. There is no merit in this contention. The instruction deals with defendant's state of mind, his knowledge of what *may* result from his conduct. The meaning is perfectly clear. Furthermore, appellant herself requested an instruction which was refused as covered by other instructions in which she defined wilful misconduct as the "intentional doing of something with knowledge that serious injury is a probable (as distinguished from a possible) result." Instructions on wilful misconduct using the term "serious" in the same manner used herein were approved by the court in *Cope* v. *Davison,* 30 Cal.2d 193, 197-199 [180 P.2d 873, 171 A.L.R. 667].

The court gave introductory instructions stating that plaintiff had alleged that while she was riding as a guest in defendant's automobile, he drove in a wilful or reckless manner, and that she had charged him with wilful misconduct, that this was necessary to recover in a guest case, and that defendant had denied the charges and had pleaded the special defense of assumption of risk. The court stated that those were the problems and that for the jury to arrive at a proper verdict "it is necessary for me to give you instructions as to what constitutes wilful misconduct, what a driver should do and what a guest should do under the circumstances. The next problem is the question of damages . . ." Appellant objects to the quoted language, saying that by this instruction the court told the jury that assumption of risk was part of appellant's burden of proof as to what constituted wilful misconduct. This appears to be a highly unlikely deduction from the above language on the part of the jury. While the language is none too well chosen it obviously means that instructions on the subjects just mentioned, wilful misconduct and assumption of risk will follow later. It attempts no definition of wilful misconduct, and could not have misled the jury.

An instruction was given distinguishing wilful misconduct from gross negligence. It was said that "wilful misconduct involves a more positive intent actually to harm another or to do an act with a positive, active and absolute disregard of its consequences. The law has excluded in a case where a guest is suing all forms of negligence as a basis

of recovery. The law will only permit a recovery where a guest sues when it appears that the thing done by the defendant amounts to misconduct as distinguished from negligence, and the law further states that this misconduct must be wilful. While the word 'wilful' implies an intent, the intention referred to relates to the misconduct and not merely to the fact that some act was intentionally done. Wilful misconduct implies the intentional doing of something either with a knowledge that serious injury is a probable (as distinguished from possible) result or the intentional doing of an act with a wanton and reckless disregard of its possible result.''

Appellant asserts that bringing in the terms ''gross negligence'' and ''negligence'' without defining them was error, and that the language that wilful misconduct involves a more positive intent to harm another is erroneous. The language of this instruction appears to have been taken from an opinion in the case of *Meek* v. *Fowler,* 3 Cal.2d 420, 425 [45 P.2d 194], and was quoted with approval in *Hawaiian Pineapple Co.* v. *Industrial Acc. Com.,* 40 Cal.2d 656, 662 [255 P.2d 431]. In the recent case of *Lynch* v. *Birdwell,* 44 Cal.2d 839 [285 P.2d 919], it was held in disapproving BAJI instruction 209-J that it was erroneous to instruct that wilful misconduct is a form of negligence, for wilful misconduct and negligence are mutually exclusive.

Respondent contends that it should still be proper, however, to point out the distinction between negligence and wilful misconduct, and that the cited case has not forbidden courts to do so. The instruction herein, unlike the instruction condemned, did not state that wilful misconduct was a ''form of negligence'' but pointed out that all forms of negligence were entirely excluded where a guest sues for wilful misconduct. The instruction then went on to correctly define the two types of wilful misconduct. Therefore, the later instructions given that ''an intent to injure anyone is not a necessary ingredient of wilful misconduct'' in defining the second type of wilful misconduct, the intentional doing of an act with a reckless disregard of its possible result, should not have been confusing to the jury.

Appellant argues that the giving of the instructions which further amplified the meaning of recklessness, which pointed out that an *intent to injure* was not a *necessary* element of wilful misconduct hopelessly conflicted with the prior instructions given at respondent's request. These latter instructions were requested by appellant herself. They are

apparently taken from the Restatement of Torts, section 500, and the California annotations show that they are in accord with numerous decisions in this state. If there is error in any of them it was invited error but if the two types of wilful misconduct are kept in mind they do not appear to be conflicting.

Prejudicial error is claimed in the giving of the following instruction at the instance of respondent: "The mere failure to perform a statutory duty is not alone wilful misconduct. It amounts only to simple negligence. To constitute wilful misconduct there must be actual knowledge, or that which in the law is esteemed to be the equivalent of actual knowledge, of the peril to be apprehended coupled with a conscious failure to act to the end of averting injury plus knowledge that an injury to a guest will be a probable as distinguished from a possible result." The complaint herein alleged that the accident happened when respondent's automobile collided with the automobile ahead which had stopped in compliance with a stop signal, hence there was an allegation and there was evidence of a failure to perform a statutory duty. The instruction did not advise the jury, as appellant contends, that in order to prove wilful misconduct appellant must prove that some statutory provision had been violated, and that such statute was violated with actual knowledge or the equivalent thereof. Appellant correctly states that wilful misconduct may be established without the showing of any violation of a statutory duty, and there is nothing in this instruction that in any way limits the jury to finding that the misconduct must be the violation of such a duty. (See *Porter* v. *Hofman,* 12 Cal.2d 445, 448 [85 P.2d 447].)

There is no merit in appellant's charge that there was prejudicial error in the court's instruction in abstract terms on the evidentiary weight to be given a presumption. She contends that it placed on her the additional burden of disproving a presumption that there was no wilful misconduct. The court instructed that no presumption of wilful misconduct arose from the fact that a person was injured or an accident happened. It did not instruct that there was a presumption that there was no wilful misconduct. The only presumption given to the jury was that a witness was presumed to speak the truth. This could not have been prejudicial. There is likewise no merit in the contention that the instructions were argumentative.

Appellant contends that the court erroneously restricted

her cross-examination of respondent regarding a conversation between him and appellant's counsel in the latter's office prior to the filing of this suit. The record does not bear this out and no error appears.

It is asserted that prejudicial misconduct on the part of respondent's counsel occurred in that he interjected an inference of collusion and attempted to impeach his own witness in order to destroy any favorable evidence given on cross-examination. As defense counsel did not deny in his affidavit on motion for a new trial, appellant's counsel's statement in her affidavit that "this entire matter of the visit of the defendant was well known to the insurance carrier for the defendant and must have by necessity been equally well known to the defense counsel, Mr. Bledsoe," appellant says he therefore admitted that he had known all along about the visit of respondent to appellant's counsel's office. Respondent's counsel stated that he was trying to refresh respondent's recollection by asking the question. We do not see how the jury would infer collusion from the fact that appellant's attorney interviewed respondent. Counsel for appellant admitted that the record of the interview could not be located. If the jury thought there might be something suspicious in that fact, appellant's counsel herself supplied them with that information.

Prejudicial misconduct is further asserted in that respondent's counsel allegedly brought out a feeling of friendship between appellant and respondent after filing of the suit. Since there was evidence in the record that respondent dated appellant prior to the accident, and that she sometimes rode with him in his automobile after the accident, the jury were well aware that the parties had once been somewhat friendly. Since appellant was married to someone other than respondent at the time of trial, the jury could very well have inferred that the parties might not then be as friendly as they had formerly been even if their attention had not been drawn to the fact. It would seem that respondent was entitled to show that appellant rode with respondent after the accident, in order to convince the jury that she would not have done so if she believed he had been guilty of wilful misconduct in the accident.

It is further charged that prejudicial misconduct was committed in the examination of Mrs. Wong. Counsel for respondent had a statement signed by Mrs. Wong which

145

was offered for identification. She was asked if she remembered visiting night spots in Las Vegas and answered, "No." Upon later being shown the statement, she said that she did not remember the part about visiting different sights in Las Vegas. Respondent's counsel then said he would offer it for identification only as it did not refresh her recollection. Appellant claims that this was an attempt by respondent to impeach his own witness, and that it was also an attempt to infer collusion. Here the witness had simply said she didn't remember, so it must be viewed as an attempt to refresh her recollection, rather than impeach her. Counsel did not therefore contradict the witness. (See *Island* v. *Fireman's Fund Indem. Co.*, 30 Cal.2d 541 [184 P.2d 153, 173 A.L.R. 896].) The only part of the statement disclosed to the jury was that read by the witness when she said she didn't remember the part that they spent the night visiting the different sights in Las Vegas.

In none of the above instances did appellant claim prior to her motion for new trial that there had been misconduct. ▮ It is generally necessary that the attention of the trial court be called to the alleged misconduct. Here there was no assignment of misconduct and the trial court was not asked to instruct the jury to disregard the remarks. ▮ Furthermore the trial judge passed on the asserted misconduct on the motion for new trial and as was said in *Cope* v. *Davison*, 30 Cal.2d 193, 202-203 [180 P.2d 873, 171 A.L.R. 667], he was in a better position than the appellate court to determine whether a verdict resulted wholly or in part therefrom, and his conclusion will not be disturbed unless plainly wrong.

As to the final charge of misconduct on the part of the trial judge, we find nothing in the record to support the charge that the trial judge did not take appellant's counsel seriously. Nor was there misconduct in the other instances cited in the sustaining of objections or the questioning of witnesses. ▮ That the alleged misconduct influenced the jury is not to be necessarily inferred from the fact that the jury was out only 25 minutes. In the case of *Sanguinetti* v. *Moore Dry Dock Co.*, 36 Cal.2d 812 [228 P.2d 557], cited by appellant, the jury within 35 minutes returned a verdict for $75,000 in a case wherein plaintiff was allowed to amend his prayer for damages in the presence of the jury, a flagrant case of prejudicial error. That case was rather difficult in that it was

a case brought under the Jones Act and comparative negligence had to be considered.

We conclude that the case was fully and fairly tried and that there is no prejudicial error in the record.

Judgment affirmed.

Nourse, P. J., and Agee, J. pro tem.,* concurred.

A petition for a rehearing was denied August 15, 1956, and appellant's petition for a hearing by the Supreme Court was denied September 15, 1956.

*Assigned by Chairman of Judicial Council.