JAY J. RUSSELL, Appellee, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

**RAILROADS:** Accidents at Crossings—Negligence Per Se. A traveler is guilty of negligence *per se* in driving upon a railway crossing in the nighttime, and without diverting circumstances, and with full knowledge that a customary train is then, with bell ringing, in the very vicinity of the crossing, and will be using the crossing at any moment for switching purposes. (See Book of Anno., Vols. I, II, Sec. 8018.)

Headnote 1: 33 Cyc. pp. 982, 985, 1018, 1019.

Headnote 1: 21 L. R. A. (N. S.) 794; 29 L. R. A. (N. S.) 924; 46 L. R. A. (N. S.) 702; 1 A. L. R. 203; 41 A. L. R. 405; 22 R. C. L. 1015.

*Appeal from Des Moines Municipal Court.*—H. H. SAWYER, Judge.

NOVEMBER 15, 1927.

Action for damages to an automobile, based on the negligence of the defendant in the operation of a train, resulting in a collision with the automobile. Defendant admitted the collision, but denied its negligence, and alleged that plaintiff's damage was proximately caused by plaintiff's contributory negligence: Motion of defendant for a directed verdict was overruled, and cause submitted to the jury. A verdict for the plaintiff was returned, and from the judgment entered thereon the defendant appeals.—*Reversed.*

·*J. G. Gamble, F. W. Miller,* and *R. N. Lynch,* for appellant.

*H. W. Hanson,* for appellee.

DE GRAFF, J.—This is a railroad-crossing case. Plaintiff's automobile was struck at the crossing in question by a switching train, operated by the defendant railroad company. Upon the conclusion of plaintiff's evidence, which consisted of the testimony of the plaintiff himself and one other witness, who was not an eyewitness, the defendant filed a motion for a directed verdict in its behalf, wherein it is recited that it affirmatively appears from the evidence that the plaintiff drove onto the railroad crossing, with which he was entirely familiar, when his view was obstructed, and when he knew that a train was due to cross the crossing, and attempted to cross, hearing a warning bell at the time; that, after hearing the warning bell, he proceeded onto the crossing, which he testifies was obstructed so that he could not see to the east or west where trains might be approaching. This motion was overruled, but was renewed at the close of all the evidence, and again overruled. The correctness of the ruling is one of the controlling questions in this case. We will first give consideration to the salient facts.

The accident occurred at the intersection of West Second Street and the appellant's tracks in the city of Des Moines.

These tracks intersect West Second Street at right angles. The street runs north and south. Where West Second Street intersects appellant's right of way, there are five tracks. The most northerly track is an industry track. The fourth track from the north is known as the east-bound main-line track, while the third is the west-bound main-line track. Trains traveling west come into Des Moines and cross West Second Street over the west-bound main-line track, while trains·traveling east into Des Moines cross Second Street on the east-bound main-line track. At the point where West Second Street crosses the appellant's tracks, it is 62.5 feet wide, from building to building.` The paving north of the tracks on West Second Street is 42.2 feet wide.

The accident occurred a few minutes before 11 o'clock on the night of January 20, 1926. The plaintiff was a resident of Des Moines, and employed as a stationary fireman at the plant of Shotwell & Company. His working hours were between 11 at night and 7 in the morning. He used his auto in going to his place of business, and usually arrived at his work 10 or 15 minutes before 11.

The arrival train involved in this accident is known as Train No. 14. It is a through train from Lincoln to Chicago, and arrived at Des Moines on the night in question on the east-bound main-line track. Upon its arrival, the pilot pulled the pin of the mail car back of the engine, and gave the signal to go ahead. The pilot took a position on the west end of the mail car, with his foot in the stirrup and his hand on the grab iron which is on the southwest corner of the car. The engine, with the mail car attached, then moved east on the east-bound main-line track until it passed the crossover switch at West Second Street. The engine and car, after stopping, began to back through the crossover switch to the west-bound main-line track. The engine was pushing the mail car at that point slightly northwest, as it moved through the crossover switch onto the west-bound main-line track. The accident happened as the engine and mail car were backing west on the west-bound main-, line track.

I. What did the plaintiff know, and what did he see, or was in a position to see, when he approached the track, as he drove south on West Second Street? In answering this question, we will use the plaintiff's own testimony:

"I crossed there for nearly nine months. At about 11 o'clock every night, there is a train due in there, and I knew it was there. I could hear the bells ringing. * * * In order to get down to see the depot to see the train, you had to drive out on the tracks between the rails, before you could see them. As I drove up and slowed down to see toward the depot, I could see no headlight,—the train was backing onto me, and I judge it was probably 20 feet from me. I saw the flagman signal for me or the train to stop, but there was no chance for me to stop. I swung around, and thought I would rather have them hit me sideways. When the mail car was within a short distance of me, I saw the switchman flagging down. He was on the outside of the mail car from where I was. When I first observed the switchman, he was on the track that the train was backing up on. He had a lighted lantern. He was giving signals to stop. Whether a signal to me to stop, or the engineer, I didn't know; but I was on the track then. I had stopped, and stopped real quick; but I did not have time to reverse, and I could not beat the train across. There was a bell ringing. The bell rings down there; but, as you come down that street, with buildings on both sides, it is hard to tell whether it is on the right hand or the left hand, and whether it is the Rock Island or some other track. I approached the crossing between five and seven miles an hour. There was steam issuing from the mail cars. It was thick enough to partially obstruct the tracks ahead. I could see through it dimly, though. The train was moving neither slow nor fast. It was kinda between. It carried my car two or three feet, but very little. It did not carry me past the crossing. The steam was dense enough, drifting toward the darkness, that it was impossible to see through it."

Upon cross-examination, the plaintiff testified that to the east he could not see through it (steam and darkness) at all,— not a thing.

"Q. You could not see through it, and you heard an engine bell when you approached the crossing, didn't you? A. Yes, sir. Q. And do you know why engine bells are usually rung? A. As a warning. Q. And you heard a warning then, didn't you, and you could not see to the east, whether a train was coming or not, and yet you drove onto the tracks? A. I could hear the bell, but I could not distinguish whether

it was to the east or to the west, and the only way to tell was where I could drive up to the west. Q. You knew you were driving over railroad tracks, didn't you? A. Yes, sir. Q. You knew No. 14 was due about that time, didn't you? A. Yes, sir. Q. You knew that No. 14 switched over West Second Street every night, didn't you? A. I knew it switched in there,—yes. Q. You knew it might be east of the crossing? A. I knew it might be east,—yes. Q. You knew it pulled down from West Second Street crossing and backed in with cars, didn't you? A. Yes. Q. And as you approached that crossing that night, you knew that this passenger train and some mail cars might be backing in from the east? A. Certainly. Q. And you could not see through the steam, could you? A. I could not see to the east. Q. How many feet would it have taken for you to stop your car, if you had wanted to stop? A. In three feet.''

Does this testimony from plaintiff's own lips bar his recovery, as a matter of law? It is unnecessary to say that the evidence offered by the defense is not helpful in any way to the plaintiff. We have frequently said that the question of contributory negligence is ordinarily for the jury to answer. *Wasson v. Illinois Cent. R. Co.,* 203 Iowa 705; *Towberman v. Des Moines City R. Co.,* 202 Iowa 1299.

It is true that, if a railroad crossing is especially dangerous, by reason of obscuration of the view or other cause, the railroad company must use care commensurate with the danger; but it is also true that, if a plaintiff knows that the crossing is dangerous, because the view is obscured, and knows of the operation of a train, and is warned by a bell, he must also act, under the circumstances, with care commensurate with the danger. In the instant case, there was no diverting circumstance. We speak, in the language of the law, of a person of ordinary care and prudence. Some view this personage as a mythical person, classifiable with John Stuart Mills' ''economic man,'' in working out the so-called laws of economic theory. Nevertheless, there must be standards of general application. The difficulty lies in the differentiation of cases and in applying the general principle to the facts of a particular case. *Nederhiser v. Chicago, R. I. & P. R. Co.,* 202 Iowa 285.

Plaintiff admits that he could not see at all to the east.

He admits that he knew that the train in question arrived in Des Moines at about 11 o'clock every night, and that the engine did some switching. He admits that he knew that the engine of this train set out a mail car, and that, in order to complete this movement, it was necessary to pull down to a point east of West Second Street. He heard an engine bell ringing. There was but one bell ringing, and there was but one train at the time and place in question. In fact, the plaintiff knew the entire situation, but he drove onto the crossing and into the steam without regard to consequences.

The law of this case bearing on the question of contributory negligence has been defined and applied in numerous decisions of this court, and has found expression in many of the decisions of our sister states. A driver of an automobile, under the instant circumstances, cannot deliberately take a chance, and expect to recover damages by legal action. See *Claar Transfer Co. v. Omaha & C. B. St. R. Co.*, 191 Iowa 124; *Acker v. Union Pac. R. Co.*, 106 Kan. 401 (188 Pac. 419); *Fannin v. Minneapolis, St. P. & S. S. M. R. Co.*, 185 Wis. 30 (200 N. W. 651).

II. One further proposition is seriously urged by appellant, which has to do with an instruction given by the court, in which reference was made to a certain ordinance of the city of Des Moines, imposing a duty upon those in the operation of a train after night to keep a light on the front end of the moving train. In this case, the front end of the train in question was the rear end. The evidence shows that there was a light,—to wit, a lantern swung by the flagman who was stationed on the rear end of the mail car in such a position that a person approaching the tracks could see the swinging lighted lantern. The plaintiff did see the lantern, but his claim is that he did not see it until he was too close to the track to stop his automobile.

The point made by the appellant is that the instruction should not have been given, for the reason that it was not afforded an opportunity to question the applicability of the ordinance, if such an ordinance existed, nor was the appellant afforded an opportunity to object or protest in any way before said ordinance was mentioned to the jury, as it was not pleaded or introduced in evidence. In brief, it is the claim of appellant that the municipal court was not privileged to take judicial

notice of the ordinance in question. We deem it unnecessary to rule this point, as the error so denominated was nonprejudicial. This appeal must be ruled by the doctrine of contributory negligence.

The trial court should have sustained defendant's motion for a directed verdict. Wherefore, the judgment entered is— *Reversed.*

Evans, C. J., and Albert, Morling, and Wagner, JJ., concur.