(No. 6629. April 6, 1939.)

W. W. WHIFFIN, as Administrator of the Estate of HELEN
P. WHIFFIN, Deceased, Appellant, v. UNION PA-
CIFIC RAILROAD COMPANY, a Corporation, and
H. W. JOSHTON (Johnston), Respondents.

[89 Pac. (2d) 540.]

144

Maurice H. Greene and Karl Paine, for Appellant.

Geo. H. Smith, H. B. Thompson and L. H. Anderson, for Respondents.

GIVENS, J.—Appellant as administrator of the estate of Helen P. Whiffin, deceased, sued respondent railroad company and H. W. Joshton engineer of the lethal train, to recover damages for her death in a crossing accident. The trial court sustained a general demurrer to the complaint and this appeal is from the consequent judgment of dismissal upon appellant's refusal to plead further.

The essential allegations of the complaint are:

"That on the 15th day of January, 1937, about 6:30 o'clock, P. M., plaintiff's intestate drove an automobile on and along said highway toward said crossing on the northeasterly side of said railroad, intending to pass over said railroad at said crossing to the southwesterly side of said railroad; that upon arriving at said crossing on said highway she was unable to pass over to the opposite side of said railroad at said crossing by reason of the presence of an east-bound freight train of the defendant corporation, which then and there blocked said highway at said crossing; that she brought her automobile to a stop at a point on said highway about 25 feet from the northeasterly rail of track No. 1 and waited for said freight train to pass; that while she waited at said point said freight train was moving slowly in a southwesterly direction on track No. 2, and at the same time, all unknown to her, a west-bound passenger train of defendant corporation, moving in a northwesterly direction, was approaching said crossing at a high rate of speed on track No. 3; that at said time the view of plaintiff's intestate was obstructed by the presence of said freight train so that she was unable to see track No. 3 or said approaching pas-

senger train; that as soon as said freight train had crossed said highway at said crossing, and while her view of said passenger train was still obstructed by said freight train, and without any notice or warning or knowledge of the proximity or approach of said passenger train, plaintiff's intestate started her automobile and drove over track No. 1 and across track No. 2 and was in the act of driving over track No. 3 on said crossing to the southwesterly side of said railroad when the locomotive of said passenger train (of which locomotive the defendant H. W. Joshton was in charge and then operating as engineer thereof) crashed into said automobile, instantly or almost instantly killing her and one Doris Evans, who was riding with her in said automobile at the time of said collision.

"V

"That at the time of said collision the defendant corporation maintained an automatic signaling device at or near said crossing, on the northeasterly side of said railroad which was operated by the approach of and departure of trains to and from said crossing, but that the defendant corporation did not maintain gates or any similar protection against accidents thereat, and did not employ, station, or keep a flagman, or watchman, or other servant or person at said crossing at said time to warn plaintiff's intestate or any other person or persons of the approach of said passenger train, although on divers occasions theretofore it had provided such protection under like circumstances.

"VI

"That on the 15th day of January, 1937, was a cold day with a temperature at or below freezing, and at the time of said collision and just prior thereto it was snowing slightly and the surface of said highway at said crossing was slippery to the degree that after plaintiff's intestate had proceeded to a point on said crossing where her view of said passenger train was no longer obstructed she was unable to accelerate the speed of said automobile sufficiently to avoid said collision, although she attempted to so avoid it; that said highway was so slippery at said time and place as to make it appear to plaintiff's intestate as a reasonably prudent person that she was or would be unable to stop said automobile

in time to avoid said collision, and plaintiff alleges that if she had attempted to stop said automobile after her view was no longer obstructed she would have been unable to do so in time to avoid said collision owing to the said slippery condition; and plaintiff further alleges that plaintiff's intestate exercised ordinary care in said emergency; that the defendant H. W. Joshton applied the brakes on said passenger train as soon as he discovered said automobile, but after discovering the same he was unable to stop said train in time or to check its speed sufficiently to avoid said collision.

"VII

"That plaintiff is informed and believes and therefore alleges that the whistle of the locomotive of said passenger train was sounded as said train approached said crossing, but that plaintiff's intestate did not hear it, or did not hear it in time to avoid said collision, or if she did hear it she thought it was the whistle of the locomotive of the departing freight train; that while plaintiff's intestate waited for said freight train to pass over said crossing the windows of said automobile were closed and the radio with which said automobile was equipped was turned on, the which, together with the noise made by said freight train, prevented or tended to prevent her from hearing the whistle of said passenger train, or from hearing it in time to avoid said collision.

"VIII

"The plaintiff alleges that said accident was caused by defendants' negligence in this

"(a) That at the time of said collision and immediately prior thereto the said passenger train was being run by the defendants at a high rate of speed as aforesaid, to-wit, at a rate of speed greatly in excess of twenty-five miles an hour, contrary to an ordinance of said city of Caldwell regulating the speed of trains within the corporate limits of said city and making it unlawful for trains to be operated therein at a greater speed than twenty-five miles an hour.

"(b) That it was the duty of the defendant corporation to provide gates or similar protection against accidents at said crossing, and to employ, station, and keep a flagman, or watchman, or other person at said crossing to warn plain-

tiff's intestate and others of the approach of said passenger train; that the said automatic signaling device failed to provide plaintiff's intestate any warning whatever of the approach of said passenger train for the reason that it was designed to signal and did signal the departure of trains from said crossing as well as the approach of trains to said crossing; and at the time of the accident it was being operated by said departing freight train or would have been operated by it if said passenger train had not been where it was at said time.

"The plaintiff alleges that if the speed of said passenger train had not been in excess of twenty-five miles an hour at said time and place and on said occasion, or if gates or similar protection against accidents had been provided at said crossing, or if any person had warned plaintiff's intestate of the approach of said passenger train at said time and place and on said occasion said accident would not have happened, and defendant's violation of their duty to observe said ordinance and the defendant corporation's violation of its duty to provide said gates or similar protection against accidents or to provide said warning, and the violation of each of said duties, was the proximate cause of said accident."

Though. under sec. 5–816, I. C. A., contributory negligence is a defense to be pleaded and proved by a defendant, where the complaint itself discloses plaintiff's negligence was one (not necessarily the only one) of the proximate causes contributing to plaintiff's injury a general demurrer should be sustained. (*Goure v. Storey,* 17 Ida. 352, 260, 105 Pac. 794; *Smith v. Oregon Short Line R. R. Co.,* 47 Ida. 604, 610, 277 Pac. 570; *Draper v. City of Burley,* 53 Ida. 530, 26 Pac. (2d) 128; *Burns v. Getty,* 53 Ida. 347, 351, 24 Pac. (2d) 31; *Adkins v. Zalasky,* 59 Ida. 292, 81 Pac. (2d) 1090, 1092.)

Respondent contends the complaint shows these acts of nullifying contributory negligence: failure to listen and/or failure to look, and heed while in a place of safety, and in the face of an operating automatic signal or wigwag driving on the third track immediately upon the caboose clearing the crossing and before they (intestate and her companion)

could have a clear view of the train approaching from the opposite direction on the third track.

Appellant urges the demurrer admits all material allegations of the complaint well pleaded, which is correct as to allegations of fact or legitimate or necessary inferences to be drawn therefrom. (*Boise Payette Lumber Co. v. Idaho Gold Dredging Corp.*, 56 Ida. 660, 58 Pac. (2d) 786; *Fond v. McCreery*, 55 Ida. 144, 39 Pac. (2d) 766; *In re Eastern Idaho Loan & Trust Co.*, 49 Ida. 280, 288 Pac. 157, 73 A. L. R. 1323.) Thus appellant contends the demurrer admits (a) that the place of the accident was a busy public crossing within the city limits of Caldwell, over which trains were operated on three parallel tracks; (b) that the robot installed near the crossing provided no warning whatever because of the presence of the departing freight train; (c) that when the deceased started across the tracks her view was obstructed by the freight train; (d) that owing to the slippery condition of the highway the deceased was unable to avoid the collision by increasing the speed of or stopping her automobile when her view was no longer obstructed; (e) that the death train was running at a rate of speed positively prohibited by a city ordinance; (f) that no gates were maintained at the crossing; (g) that no one warned the deceased of the approach of said train, and that the respondent company employed no one to warn her of its approach, "although on divers occasions theretofore it had provided such protection under like circumstances"; and (h) "that if the speed of said . . . . train had not been in excess of twenty-five miles an hour . . . . or if gates or similar protection against accidents had been provided at said crossing, or if any person had warned plaintiff's intestate of the approach of said train. . . . . said accident would not have happened."

The demurrer, however, does not admit as statements of fact, conclusions of law. (*Groshoff v. St. Gertrude's Convent*, 44 Ida. 554, 258 Pac. 528; *Smallwood v. Jeter*, 42 Ida. 169, 244 Pac. 149; *J. C. Penney Co. v. Diefendorf*, 54 Ida. 374, 406, 32 Pac. (2d) 784; *Boise Payette Lbr. Co. v. Idaho Gold Dredging Corp.*, supra; *McEachern v. McEachern*, 126 Wash. 32, 216 Pac. 881, 882; *Matthews v.*

*Oklahoma Pub. Co.,* 103 Okl. 40, 219 Pac. 947; *Hargrove v. Oklahoma Press Pub. Co.,* 130 Okl. 76, 265 Pac. 635; *Walker v. Sutherland,* 133 Or. 457, 289 Pac. 387; *House v. Johnson,* 19 Colo. App. 524, 76 Pac. 743, 746; *Hemp v. Universal Auto. Co.,* 173 Wash. 585, 24 Pac. (2d) 77, 78.)

■ . Therefore the demurrer admits as facts paragraphs III, V, VII and (a) of VIII of the complaint. Likewise paragraph IV except these statements therein: that said passenger train was moving west "all unknown to her (deceased)" and that she drove her automobile onto track No. 3 "without any notice or . . . . knowledge" of the approach of the passenger train. As alleged statements of fact their efficacy is reduced if not totally destroyed by the statement in the same paragraph that deceased was "instantly or almost instantly killed" by the train, so how could it be determined as a basis for an allegation of fact what was "unknown" to her or what "notice" or "knowledge" she did not possess?

If considered as inferences from her acts or as conclusions of the pleader there remains the question of whether deceased was guilty of contributory negligence in disregarding those warnings and physical conditions at the crossing as disclosed by the complaint which in law she should have heeded and thus had "notice", "knowledge" and the approach of the passenger train not been "unknown" to her.

■ The demurrer admits the underlying facts but not as legal conclusions what effect as negativing due care by respondent the circumstances had on deceased's mind.

*Fleenor v. Oregon Short Line R. R. Co.,* 16 Ida. 781, 102 Pac. 897, is relied on as support for the proposition that respondents admit it was negligence not to have a gate and/or watchman at the crossing. In the first place while this case does say that though no statute or ordinance requires them, it may be negligence for a railroad company not to have gates and/or a watchman at a crossing, it does not leave without limit such requirement, but said:

"The appellant complains of the action of the court in allowing evidence to be introduced showing that the railroad company did not provide a flagman or any gates for the F street crossing, . . . . As to the evidence in regard

to maintaining gates and a flagman at the crossing, we see no error in the action of the court. No ordinance of the city of Nampa was shown requiring any such thing, but the fact that the city had no ordinance requiring the railroad company to maintain gates or station a flagman *at this crossing* would not relieve the company from the charge of negligence in failing to do so, if, in fact, the relative situations of the track and crossing and the extent of its use were such as reasonable care and diligence on the part of a reasonably prudent person would demand such precaution for the protection of the traveling public. (Cases.)

''The question as to whether the railroad company was guilty of negligence in not maintaining gates at <u>this crossing</u> or keeping a flagman there was properly a question of fact to go to the jury, under all the circumstances of the case and the necessities and requirements of the peculiar use of this crossing and the extent of that use by the public. Such a duty rests upon a different principle from that of ringing a bell or blowing a whistle. The latter is required by positive mandate of the statute, and a failure to do so is negligence *per se.* (*Wheeler v. Oregon R. & N. Co.,* 16 Ida. 375, 102 Pac. 347). While the duty to maintain gates and keep a flagman at a crossing is not enjoined by statute and under some, and perhaps ordinary, circumstances is not required as an act of due diligence and reasonable precaution, still under other facts and a different situation a failure to do so would constitute negligence at common law, irrespective of statutory requirement. (Cases.)'' (Underscoring ours.)

Thus this case is not authority for the proposition that whether a railroad company should have a gate or watchman at all crossings is a question for a jury, but was so as to that particular crossing.

The rule is universal that to charge a railroad company with negligence in not having a gate or watchman at a crossing, *facts* must be pleaded showing the crossing to be so hazardous as to require this safeguard.

''Considering the character of the crossing as disclosed by the evidence, the claim of the appellant amounts to this:

That it is negligence for a railroad company to permit trains to pass each other at a road crossing where the operatives of one train observe automobiles awaiting the opportunity to cross upon the side nearest the track upon which it was operated whether the employees operating the other train are advised of that fact or not. Under these circumstances the question of whether or not there was negligence is a question of law to be determined by the court. The·rule in that regard was stated by the Supreme Court of the United States in *Grand Trunk Ry. Co. v. Ives,* 144 U. S. 408, 421, 12 Sup. Ct. 679, 684, 36 L. Ed. 485; 'It seems, however, that before a jury will be warranted in saying, in the absence of any statutory direction to that effect, that a railroad company should keep a flagman or gates at a crossing, it must be first shown that such crossing is more than ordinarily hazardous; as, for instance, that it is in a thickly populated portion of a town or city; or that the view of the track is obstructed either by the company itself, or by other objects proper in themselves; or that the crossing is a much traveled one and the noise of approaching trains is rendered indistinct, and the ordinary signals difficult to be heard, by reason of other business; or by reason of some such like cause; and that a jury would not be warranted in saying that a railroad company should maintain those extra precautions at ordinary crossings in the country." (*Walton v. Oregon Short Line R. Co.,* (C. C. A., 9th) 50 Fed. (2d) 352, 353; *Opp v. Pryor,* 294 Ill. 538, 128 N. E. 580, 582; *St. Louis Southwestern Ry. Co. v. Waits,* (Tex. Civ. App.) 164 S. W. 870; *Trask v. Boston & M. R. R.,* 219 Mass. 410, 106 N. E. 1022; *Ranstrom v. Oregon Short Line R. Co.,* 18 Fed. Supp. 256; *Haller v. Pennsylvania R. Co.,* 306 Pa. 98, 159 Atl. 10, 11.)

The facts as to obstructions to view and other circumstances controlling in *Northern Pac. Ry. Co. v. Moe,* (C. C. A., 8th) 13 Fed. (2d) 377, are totally lacking herein.

The complaint herein alleges:

" . . . . a railroad crossing within the city of Caldwell, Idaho, at or near the Union Stock Yard therein, which is formed by the intersection of a public highway and the railroad of the defendant corporation, which crossing was

and is continually used as a means of walking, riding, and driving from one side of said railroad to the other by innumerable pedestrians, teamsters, horsemen, owners of and dealers in livestock, motor vehicle operators and passengers and the public at large.''

And:

'' . . . . but that the defendant corporation did not maintain gates or any similar protection against accidents thereat, . . . . although on divers occasions theretofore it had provided such protection under like circumstances.''

The allegation:

''That it was the duty of the defendant corporation to provide gates or similar protection against accidents at said crossing, and to employ, station, and keep a flagman, or watchman, or other persons at said crossing to warn plaintiff's intestate and others of the approach of said passenger train; . . . . ''

is a conclusion and must rest on the above allegations for support and adds nothing thereto in the way of substance. Thus by their demurrer respondents admit the crossing was as alleged and that ''on divers occasions theretofore it had provided such protection under like circumstances,'' but does not thereby admit it was as a matter of law negligent in not having a gate or watchman at this crossing. Of course if these facts are sufficient to show a gate or watchman should have been placed there it charges negligence in not having done so, but (b) is not admitted as factual negligence, the issue raised by the demurrer is whether in law the wigwag was adequate warning in connection with the other features of this crossing, and respondent does not admit it was not.

So as to asserted admission (g) *supra,* the demurrer does not admit respondents were negligent in not warning appellant's intestate, other than they did by the wigwag, the presence of the railroad tracks, passing of the freight train, whistle admittedly blown (though its origin not distinguished by deceased) though it had done so (i. e., had gates or a watchman) under other like circumstances.

The demurrer admits the passenger train was operated in violation of the city ordinance but not that if it

had not been so operated or that if gates or a watchman had been provided the accident would not have occurred, the underlying alleged facts must determine that.

Thus (a), (c), (d), (e), (f) and (g) stand as admitted facts, and (b) and (h) not being admitted as facts, raise only the issue as to the sufficiency of the supporting facts.

The relative duties and rights generally of travelers and railroad companies at highway 'crossings have been variously defined in *Wheeler v. Oregon R. R. etc. Co.*, 16 Ida. 375, 102 Pac. 347; *Fleenor v. Oregon Short Line R. R. Co., supra; Burrow v. Idaho etc. R. R. Co.*, 24 Ida. 652, 135 Pac. 838; *Graves v. Northern Pac. Ry. Co.*, 30 Ida. 542, 166 Pac. 571; *Smith v. Oregon Short Line R. R. Co.*, 32 Ida. 695, 187 Pac. 539; *Testo v. Oregon-Wash. R. R. & Nav. Co.*, 34 Ida. 765, 203 Pac. 1065; *Smith v. Oregon Short Line R. R. Co.*, 47 Ida. 604, 277 Pac. 570; *Polly v. Oregon Short Line R. R. Co.*, 51 Ida. 453, 6 Pac. (2d) 478; *Judd v. Oregon Short Line R. R. Co.*, 55 Ida. 461, 44 Pac. (2d) 291.

From these decisions we amalgamate these pertinent composites:

A person approaching a railroad-highway crossing, a danger and itself a warning, is required to exercise reasonable care for his safety, and to look and listen from a place of safety, and if necessary so to do, stop and look and listen from a point where his observation is effective, and from where had he looked he could have seen, or heard had he listened. He may not go onto the crossing without reasonably using his senses, and while in a place of safety must effectively look and listen, and make sufficient careful observation to ascertain whether he may safely proceed before going upon the track, in order to avoid any possible accident from approaching trains, and his failure to do so is not excused by the railroad company omitting its statutory duties. While he need not necessarily keep his eyes continuously upon the railroad track, where there is no obstruction the traveler is bound to see what is plainly visible. Anyone who fails to observe the above caution, or thoughtlessly goes upon a crossing, his mind not then being diverted by anything not under his control, or chargeable to the railroad company, or which should reasonably be

guarded against by the railroad company, as a hazard at the crossing, is guilty of contributory negligence, depriving him of the right to recover for any injury occasioned thereby. If he chooses to take risks, he must bear the possible consequences thereof.

By sec. 48–505, I. C. A., an autoist approaching an interurban or steam railway grade crossing and a clearly visible and positive signal gives warning of the immediate approach of a railway train or car, must bring the vehicle to a complete stop before traversing such grade crossing, and such stopping must be effective for the traveler's safety and is governed by the above requirements as to looking and listening, and if the traveler knows or should have known of the same apparent or further danger, and he may with safety after starting onto the crossing again stop and look and listen to avoid danger, it is his duty to do so, and to not so stop is not a reasonable compliance with the statute.

No speed at which a train may be running justifies the injured party in going upon the track without looking and listening and exercising due care and precaution, and is no excuse or justification for a person subjecting himself to the danger and hazard of being run over. It is the duty of the traveler on the highway to give way for the passage of trains.

The traveler however has the right to assume that the railroad company will give the required signals of the train's approach, and that it will be running and operating its trains at such places at the usual and ordinary rates of speed. The traveler seeing a train coming miles away has a right to assume that it is running at the usual speed and that he can cross the track without being wounded or killed.

The railroad company must make the approach of its trains at crossings known by appropriate means so that the traveler by looking and listening, and stopping so to do when required by statute or otherwise necessary, before crossing the tracks may be able to discover, while in a place of safety, the approach of trains.

The railroad company must comply with any statute or ordinance and a failure to do so is negligence *per se*. In addition thereto and compliance therewith, the railroad company must provide such warnings and safeguards as the relative situations of the tracks and highways and crossings, and the extent of its use, as a reasonably prudent person would demand as proper precautions for the protection of the traveling public, and a failure to do so constitutes negligence.

The railroad company and the traveler have equal and like rights and duties, and upon them rest like responsibilities.

The complaint herein expressly negatives any application of the doctrine of last clear chance, so no rules appertaining thereto are mentioned or discussed.

Thus if the railroad is negligent in any one of the above particulars, it is liable to the traveler, unless he, in turn, is guilty of any negligence on his part, in which event he may not recover. (*Rippetoe v. Feely*, 20 Ida. 619, 119 Pac. 465.)

Any violation of these standards of conduct, by the railroad company or traveler, must, of course, proximately contribute to the ensuing accident to establish liability, or prevent recovery.

The speed of the train, though in excess and therefore in violation of the ordinance, is not shown to have been as such, a proximate cause of the accident, because it is alleged deceased did not know of the approach of the passenger train, hence perforce she did not rely on its approach at a legal speed permitting her to cross in front of it, and the rule in *Fleenor v. Short Line R. R. Co., supra*, does not assist the complaint. Nor are facts alleged which show that if the train had traveled at a legal rate, the accident would not have happened at all, or deceased been merely injured and not killed. No allegation states the distance of the city limits east of the crossing, how fast the passenger train was going, the exact relative position of the west end of the caboose on the freight train and front of the passenger engine and consequent increasingly clear angle of vision to deceased before and as she started onto the north, middle or south track, and thus any attempt to determine how the

speed as such contributed to the accident by considering the application of any analysis of the above essentials absent from the complaint, or that a less speed would not have killed deceased, leads to mere speculation and conjecture. (*Chicago Rock Island etc. R. Co. v. Houston,* 95 U. S. 697 24 L. ed. 542; *Chesapeake & O. Ry. Co. v. Harrell's Admr.,* 258 Ky. 650, 81 S. W. (2d) 10.)

Deceased's negligence as contributing to the accident must be considered in the light of the circumstances as they existed, not as they might have been, so likewise must the speed of the passenger train, so far as the present complaint is concerned. (*Henderson v. St. Louis-San Francisco Ry. Co.,* 314 Mo. 414, 284 S. W. 788, 793.)

Appellant's brief does not enlighten us nor show how there was any causal connection between the excess speed as such and the accident, other than the following:

"When in the exercise of its right of way, it (railroad) violates an ordinance fixing the speed limit of trains at dangerous crossings it is in duty bound to provide protection to the users of such crossings commensurate with the increased danger which such violation creates; otherwise the ordinance is nullified and the railroad company is a law unto itself."

Likewise:

"If the train had not been running at an unlawful rate of speed, her life would have been spared."

This is mere assertion, not argument or explanation. Death resulted because deceased, most unfortunately drove her car in front of this train, which had a right to be on the track, and could have traveled no other place, which being at that point, at that time, could not have helped but strike deceased, and when she had herself proceeded to the place of danger. (*Corbett v. Hines,* (Iowa) 180 N. W. 690.) As alleged in the complaint, the engineer of the passenger train had no opportunity to do anything to save her, thus not bringing the case within *Branson v. Northern Pac. Ry. Co.,* 55 Ida. 220, 41 Pac. (2d) 629.

"It is conceded by appellants that the defendant company was guilty of negligence in running its train across said crossing at a greater rate of speed than 12 miles per

hour, as limited by city ordinance. On the other hand, it is claimed by appellants that decedent was guilty of negligence in attempting to drive across said crossing at a rate of speed in excess of the provisions of the Motor Vehicle Act (St. 1923, p. 517), which provides that the speed of motorists at railroad crossings shall not exceed 15 miles per hour.

. . . . . . . . . . . . . .

"The respondent relies largely upon an indulgence of the presumption that the jury was at liberty to infer ordinary care and diligence on the part of the decedent from all of the circumstances of the case—his character and habits and the natural instincts of self-preservation—to hold the verdict. This can only be done in the absence of direct proof of fact. The circumstances of the case alone are sufficient to rebut the presumption invoked. In *Herbert v. Southern Pacific Co.*, 121 Cal. 227, 53 Pac. 651, as to this issue it was said:

" 'But the cases arising from injuries suffered at railroad crossings have been so numerous, and upon certain points there has been such absolute accord, that what will constitute ordinary care in such a case had been precisely defined; and, if any element is wanting, the courts will hold, as matter of law, that the plaintiff has been guilty of negligence. And, when injury results which might have been avoided by the use of proper care, the plaintiff cannot recover, although the defendant has also been guilty of negligence. In this special case the amount of care as well as the nature of it has been settled.

" 'The railroad track of a steam railway must itself be regarded as a sign of danger, and one intending to cross must avail himself of every opportunity to look and to listen for approaching trains. What he must do in such a case will depend upon circumstances. If the view of the track is obstructed, he should take greater pains to listen. If, taking these precautions, he would have seen or heard the approaching train, the very fact of injury will raise a presumption that he did not take the required precautions.' " (*Koster v. Southern Pac. Co.*, 207 Cal. 753, 279 Pac. 788, 789, 793.)

The complaint alleges compliance with all other statutory requirements.

There remains then the question of asserted negligence in not having a watchman or a gate at this crossing.

As indicated above, the *facts* plead as distinguished from conclusions, do not sufficiently show that this crossing, protected by a wigwag, no obscuring stationary obstructions, or other impediments to clear vision both ways, up and down the railroad, not alleged to be other than level, and not of the hazardous and distracting physical features as existed in *Judd v. Oregon Short Line R. R. Co.*, 55 Ida. 461, 44 Pac. (2d) 291, nor the amount of traffic using the crossing as in *Fleenor v. Oregon Short Line R. R. Co., supra,* was of such a nature that it was negligence for the railroad company not to have a gate or watchman there. *Walton v. Oregon Short Line R. R. Co., supra.* It is not alleged anyone on the rear of the freight train saw deceased, nor do appellants present facts or authorities to sustain the argument anyone should have seen and warned her, or that she would have heeded them any more than she did the signals shown to have existed and which she totally disregarded. Therefore the complaint was in this respect fatally defective. But conceding excessive speed did contribute to and so was a cause of the accident, and that it was negligence not to have a gate or watchman, the complaint affirmatively discloses acts of contributory negligence which were proximate causes and so justify the ruling on the demurrer.

First, it is stated deceased's view of the approaching passenger train was obstructed by the freight, but the instant before starting across the tracks she was in a place of safety, the tracks themselves were a warning, the wigwag was going, the whistle of the passenger train was blown, though not heard or distinguished, and the very departing freight was a warning that trains were running on these tracks, which obstruction was being removed, but deceased did not look from a place where she could see the approaching passenger train, which if she had waited but a few seconds would have been plainly visible, and have passed harmlessly by her on the third track. So she did not look when she could effectively see, though warnings

were before her.  Paraphrasing *Smith v. Oregon Short Line R. R. Co.*, 32 Ida. 695, at 700; 187 Pac. 539: "It was not only Mrs. Whiffin's duty, as she approached the crossing, to look for a train, but to listen for the warning signals of its approach which it was appellant's duty to give and which it did give." The complaint shows she did neither. No failure on the part of respondent lulled her into a sense of security.

Second, she knew the slippery condition of the highway all the way across the tracks, the condition being the same on the highway approaching the track, at least there is naught to the contrary, so she knew it before she started on the tracks. (*Lynch v. Pennsylvania R. Co.*, 48 Ohio App. 295, 194 N. E. 31.)  This was not shown to be a condition peculiar to this crossing, and it is not alleged there was any grade or that the approach was steep.

It is alleged that if she had attempted to stop after her view was no longer obstructed, she would have been unable to do so in time to avoid the collision, owing to said slippery condition, "and was confronted with an emergency." Deceased created the emergency, and this was not effectively looking and listening when in a place of safety, nor making careful observation to ascertain whether she could safely proceed before going upon the track.

Third, she did not hear, or paid no attention to the whistle of the passenger train; she did not listen and hear in a place of safety, when she could and should have.

Fourth, she passed the wigwag, which was operating before, or within the range of her vision, she did not observe what was plainly visible, she gave no heed to the wigwag, and there is no allegation of diverted attention other than the freight train, and while it is urged that because the wigwag would have been actuated by the freight train though the passenger train had not been there, it would likewise have been operated by the passenger train if the freight train had not been there.  But it is argued this was in effect a trap and a lure to destruction.  Pursuing such contention to its logical conclusion would simply mean the more precaution the railroad takes, the greater its negligence.

The wigwag is to warn of trains, and as this court has said the traveler must give way to the train, not the train to the traveler.

The above argument as to a wigwag being a trap was made in the following case, wherein the court pertinently and logically said:

"The evidence shows that plaintiff and her mother were both inside of and had passed the line of the wigwag and that they had their backs toward the oncoming passenger train. The wigwag was working and bell signals were ringing on both sides of the track at Benton street crossing. The defendant in operating the wigwag and sounding the bells had done everything that was required of it in the way of crossing protection and in protecting the traveling public. The wigwag was flashing danger and waving a red light back and forth and the bell was ringing loudly and this was the proper operation of the wigwag and bell. The proper application of the wigwag and the sounding of the bell is now urged as an excuse for not seeing or hearing the approach of the passenger train. We have this peculiar question presented by the record. The defendant company is confronted with a duty to warn travelers upon a highway of the approach of a train and at the same time, in view of the contention of the plaintiff, is under a duty to omit its warning signals, lest their noise constitute a diverting circumstance excusing the highway traveler, who wholly disregards the warning from using any care whatever to ascertain whether a train is approaching. The warning given by the defendant company by the operation of the wigwag and the sounding of the bell was not merely of the presence of the freight train. It was a warning of the possibility of any train approaching the crossing in question. The plaintiff admits she only looked once and that 10 feet from the track. She seeks to excuse her failure to see the train by stressing the obstructions to her view. The modern wigwag and bell, like its predecessors, the crossing flagman and the crossing gate, serves as a warning to persons approaching the track that a train is to be expected." (*Hyland v. Chicago etc. Ry. Co.*, 262 Ill. App. 427; *Grimes v. Pennsylvania R. Co.*, 289 Pa. 320, 137 Atl. 451, 453; *Van*

*Gorden v. City of Ft. Dodge,* 216 Iowa, 209, 245 N. W. 736; *Rhodes v. Pennsylvania R. Co.,* 298 Pa. 101, 147 Atl. 854.)

Appellant in his brief herein says:

"There as here if the deceased had stopped, looked, and listened long enough, there would have been no accident; and, conversely, if the defendant had not violated its duty to the deceased, there would have been no accident."

"If the failure to give a signal from the train was negligence on the part of the defendant, the negligence of the deceased contributed to the accident, and the case, therefore, comes under the rule that, where an injury is due to the negligence of both parties, no recovery can be had." (*Sherlock v. Minneapolis etc. Ry. Co.,* 24 N. D. 40, 138 N. W. 976, at 979.)

The facts in *Geist v. Moore,* 58 Ida. 149, 70 Pac. (2d) 403, readily distinguish it from the admitted situation herein.

The following authorities, considering issues of excessive speed, disregarding wigwag or other similar devices and charges of negligence as herein, under circumstances in some instances identical as to situation and like or greater number of tracks, departing trains, etc., held that conduct similar to that admitted by the complaint to have been deceased's, was such contributory negligence as to bar recovery as a matter of law:

" . . . . This rule of law affecting pedestrians applies with infinitely greater force to one crossing railroad tracks in disregard to a warning gong, where the view is obstructed, driving an automobile in which he carries into peril others than himself, in addition to imperiling the lives of trainmen and passengers on a train which may be wrecked by a collision.

" 'The general rule that one who attempts to cross a railroad track must reasonably use his own powers of observation to assure himself that there is no danger from approaching trains is clear. . . . . And the rule applies to one from whom a train approaching on a second track is hidden by a train which has just passed. *Koch v. Southern Cal. Ry. Co.,* 148 Cal. 677, 681, 84 Pac. 176, 178, 113 Am. St. 332, 7 Ann. Cas. 795, 4 L. R. A., N. S., 521; *Herbert v. Southern Pac. Co.,* 121 Cal. 227, 230, 53 Pac. 651; *Green v. Los Angeles etc. Ry. Co.,*

143 Cal. 31, 76 Pac. 719, 101 Am. St. 68; *Murray v. Southern Pac. Co.*, 177 Cal. 1, 169 Pac. 675.' " (*Griswold v. Pacific Electric Ry. Co.*, 45 Cal. App. 81, 187 Pac. 65; *Sheets v. Southern Pac. Co.*, (Cal. App.) 28 Pac. (2d) 33; *Cox v. Los Angeles etc. Ry. Co.*, 56 Nev. 472, 56 Pac. (2d) 149; *Young v. Southern Pac. Co.*, 182 Cal. 369, 190 Pac. 36, 40; *Southern Pac. Co. v. Day*, 38 Fed. (2d) 958.)

"Upon the facts appearing in this case, our views are in accord with those expressed by the Supreme Court of Ohio, namely: 'When a passing train is upon the track nearest the traveler, and one or more parallel tracks are beyond this track, the traveler on the highway must give heed to the fact that a fast moving train may be approaching the crossing in the opposite direction from that in which the train on the first track is moving, which may be entirely concealed from the view of the traveler by the moving train then occupying the crossing; and it is not the exercise of ordinary care for his own safety on the part of the traveler to await only until the passing train shall have cleared the crossing and then go forward without waiting to ascertain whether another train is approaching the crossing on a track beyond that of the passing train. Time must be given to permit the passing train to get so far beyond the crossing that the traveler, while halted in a place of safety, may be afforded a clear view of the track or tracks in both directions, that he may thereby know whether a moving train is in close proximity to the crossing thereby endangering any attempt he may make to cross the tracks in front of such approaching train. The omission of such caution on the part of the traveler will constitute contributory negligence on his part sufficient to bar any recovery for damages against the railway company for injuries which he may sustain in a collision with a train due to his omission to exercise the caution stated; and this is true, notwithstanding the fact that the employees of the railway company have neglected to give the signals of the train's approach to the crossing, required by law to be given.' *Pennsylvania R. Co. v. Rusynik*, 117 Ohio, 530, 159 N. E. 826, 56 A. L. R. 538.'' (*Rau v. Northern Pac. Ry. Co.*, 87 Mont. 521, 289 Pac. 580, 584.)

"The evidence is undisputed that the wigwag signal was working when the appellant started up after stopping his machine, and that it was working when the collision occurred. . . . . That he may have thought the operation of this signal was still caused by the car which had just passed, was no excuse, *Griswold v. Pacific Electric R. Co.*, 45 Cal. App. 81, 187 Pac. 65.'' (*Vilhauer v. Pacific Electric Ry. Co.*, 118 Cal. App. 240, 4 Pac. (2d) 960, 962.)

" . . . . The defendant was guilty of no negligence because of the fact that a freight train in the due dispatch of business and in a proper manner was moving along the northbound track. The careful movement of trains over a railroad track does not constitute an obstruction contemplated by law upon facts similar to those appearing in the record." (*Moore v. Atlantic Coast Line R. Co.*, 203 N. C. 275, 165 N. E. 708.)

" . . . . There was no emergency calling for haste. The west-bound train was only a temporary obstruction of his vision, because it was in motion. His range of vision toward the west was rapidly increasing. He was familiar with the crossing. If he had waited for a few moments, he would have had a clear view for a long distance toward the west; or, even after he had started, if he had kept watch toward the west while traveling the distance of 30 feet before he reached track 2, he could have stopped." (*George v. Northern Pac. Ry. Co.*, 59 Mont. 162, 196 Pac. 869; *Stryker v. Pennsylvania R. Co.*, 104 N. J. L. 299, 140 Atl. 451; *Haller v. Pennsylvania R. Co.*, 306 Pa. 98, 150 Atl. 10; *Moreland v. Chicago & N. W. Ry. Co.*, 117 Neb. 456, 220 N. W. 692.)

"If, on the other hand, he waited until this shifter cleared the crossing, and then immediately started across the tracks, his view of the west-bound track was obstructed by this shifter which was a long coal train of 27 cars and two engines, one in front and one in the rear. If his view of the west bound track was obstructed by this freight train when he started across, he should have waited until it had gone east a sufficient distance for him to see the west-bound track. If a train passing upon one track temporarily obstructs the view of the next train, it is the duty of the one desiring to cross, to wait until the temporary obstruction has disappeared. (*Laun v. St.*

*Louis & S. F. R. Co.,* 216 Mo. 563, 116 S. W. 553; *Wilmouth's Administrator v. Southern R. Co.,* 125 Va. 511, 99 S. W. 665; *Heaney v. Long Island R. Co.,* 112 N. Y. 122, 19 N. E. 422; *Gasser* v. *Philadelphia & R. Co.,* 266 Pa. 493, 109 Atl. 760; *Smith v. McAdoo,* 266 Pa. 328, 109 Atl. 759; *New York Cent. R. Co. v. Maidment,* 168 Fed. 21, 93 C. C. A. 413, 21 L. R. A., N. S., 794; *St. Louis, B. & M. R. Co. v. Paine,* (Tex. Civ. App.) 188 S. W. 1033.'' (*Gray v. Norfolk & W. Ry. Co.,* 99 W. Va. 575, 130 S. E. 139.)

''The driver cannot shut himself in the cab of his truck, where the use of his senses of sight and hearing are much hindered by obstacles of his own imposition, and then blindly attempt to cross a railway without first using his eyes or his ears free from the hindrances he himself has imposed on their use, and, by whatever standard his conduct is judged, be considered in the exercise of due care. Certainly that is a question as to which informed and rational minds, functioning judicially, will not differ.

. . . . . . . . . . . .

''Until the law-making power repeals the rule of contributory negligence, it is for the courts to enforce it as it stands. They are not at liberty to amend it in the interest of auto drivers, even tho the latter now form a very numerous portion of the community. The rule is based upon the idea that under all situations of danger, it is for every rational person to exercise due care for his own safety. Whether such care has been exercised is a question of fact, ordinarily for solution by a jury. But occasionally it is so clear that a plaintiff has omitted an obvious precaution for his own safety, required by any measure of due care however lax, that it becomes the duty of the court to deny him recovery. This is such a case.'' (*Rintala v. Duluth, W. & P. Ry. Co.,* 159 Minn. 499, 199 N. W. 562, 564; *Russell v. Chicago, R. I. & P. Ry. Co.,* 204 Iowa, 810, 216 N. W. 47; *Chesapeake & O. Ry. Co. v. Harrell's Admr.,* 258 Ky. 650, 81 S. W. (2d) 10; *Lamb v. Pere Marquette Ry. Co.,* 221 Mich. 273, 191 N. W. 227.)

''There are numerous cases holding that it is negligence for a traveler, after waiting for a train to pass on a near track, to start across behind it without waiting until it had passed far enough to enable him to see a train approaching from an op-

posite direction on another track." (*Henderson v. St. Louis-San Francisco Ry. Co.*, 314 Mo. 414, 284 S. W. 788, 793; *Stryker v. Pennsylvania R. Co.*, 4 N. J. Misc. 201, 132 Atl. 255.)

Judgment affirmed. Costs awarded to respondents.

Ailshie, C. J., and Budge, J., concur.

MORGAN, J., Dissenting.—The complaint shows the railroad company owned the railroad and the two trains being operated thereon, one of which obscured Mrs. Whiffin's view of the approach of the other to the crossing. It also shows either of these trains would set in motion the warning signal. This would justify one who could not see the approaching passenger train, because of the departing freight train, in believing the signal was being operated by the latter. Although the whistle of the locomotive which was drawing the passenger train was sounded, it was so near the locomotive which was drawing the freight train that it did not give notice of the approach of the passenger train because it would be readily mistaken for the whistle of the freight train locomotive. In other words, the railroad company did nothing which could reasonably be expected to warn Mrs. Whiffin of the approach of the passenger train. What it did do was to obscure its approach, and render the warning signal inefficient. The duty which rendered it necessary to maintain warning signaling devices and to give warning signals, made it necessary that the efficiency of the signals and devices be not impaired.

The complaint further shows that the railroad company, on the occasion of the accident, "did not maintain gates or any similar protection against accidents thereat, and did not employ, station, or keep a flagman or watchman, or other servant or person at said crossing at said time to warn plaintiff's intestate or any other person or persons of the approach of said passenger train, although on divers occasions theretofore it had provided such protection under like circumstances." The company having provided such protection on other occasions, under like circumstances, would tend to assure Mrs. Whiffin that no danger existed at the crossing which was not

obvious. She also had a right to believe the railroad company would not operate its freight train, without the presence of gate or watchman at the crossing, so as to obscure from her view the approach of its passenger train. Whether she was guilty of contributory negligence or not is a question for a jury.

The complaint also shows that the passenger train was being run, within the city of Caldwell, in violation of a city ordinance; that as soon as the engineer on the passenger train locomotive saw the automobile he applied his brakes, but was unable to sufficiently reduce the speed to avoid the collision. Whether, had the train been running at a speed which would not violate the ordinance the engineer would have been able to have avoided the accident is a question which should be submitted to a jury.

I. C. A., sec. 5–816, is applicable to, and should be applied to this case. It is:

"In all actions hereafter brought for damages for injury to person or property, contributory negligence is a matter of defense, and it is not necessary for the plaintiff to either plead or prove the negative of contributory negligence."

Justice Holden concurs in this dissent.