866 P.2d 189

James Ronald FARRIS; Charley Edwards and Darlene Edwards, (heirs at law of Brian Edwards), Plaintiffs–Appellants,

v.

UNION PACIFIC RAILROAD COMPANY, a Utah corporation; Idaho Transportation Department, a political subdivision of the State of Idaho, Defendants–Respondents.

and

Canyon Highway District No. 4, a political subdivision of the State of Idaho, Defendant.

No. 19947.

Court of Appeals of Idaho.

Dec. 15, 1993.

Manweiler, Bevis & Cameron, P.A., Boise, for plaintiffs-appellants. Howard I. Manweiler argued.

Paine, Hamblen, Coffin, Brooke & Miller, Coeur d'Alene, for defendant-respondent Union Pacific R.R. John Christopher Lynch argued.

Hall, Farley, Oberrecht & Blanton, Boise, for defendant-respondent Transp. Dept. J. Michael Kulchak argued.

SUBSTITUTE OPINION

The Court's prior opinion dated October 19, 1993, is hereby withdrawn.

WALTERS, Chief Judge.

This is an appeal from a summary judgment dismissing a wrongful death action against a railroad company. On appeal, we are asked to decide whether a railroad company may be found negligent for failing to install warning devices at its crossings in addition to those required by statute or other government directive. For the reasons explained below, we conclude that it can be, and accordingly reverse, in part, the district court's order on summary judgment, and remand the case for further proceedings.

### Facts

Cheryl Farris and her three children were killed on the night of December 19, 1989, when a train owned and operated by the Union Pacific Railroad Company collided with their automobile at the Ustick Road railroad crossing in Caldwell, Idaho. The railroad tracks intersect Ustick Road at an acute angle of approximately forty-five degrees. At the time of the collision the crossing was protected by a yellow railroad "advance warning" sign, located approximately 400 feet from the tracks; a red "stop" sign forty-two feet from the tracks; and a railroad "crossbuck," located thirty feet from the tracks. No active warning device, such as flashing lights or an automatic gate, was in place at the time of the accident. However, nothing obstructed any of the signs and all three were reflective and visible in the dark when illuminated by an automobile's headlights.

The train was equipped with both a bell and a whistle. As it proceeded southeasterly toward the crossing at sixty miles per hour, all of its warning equipment was functioning and operating: its headlights and tri-radial light were on bright, and its bell operating. Farris was driving in a northeasterly direction along Ustick Road toward the crossing. She proceeded past the "stop" sign and onto the intersection with the railroad tracks without stopping at the stop sign. Although the train's engineer had observed Farris approach, he assumed she would stop at the sign. When she failed to heed the sign and moved onto the tracks, he threw the train's brakes into the emergency stop position and blew the whistle in a continuous blast. The train and the automobile collided, killing all the occupants of the automobile.

### Procedural Background

The deceased are survived by James Farris, who is the natural father of two of the children, and Charley and Darlene Edwards, who are the parents of Cheryl Farris and are the maternal grandparents of the third child, (hereinafter "the Heirs"). The Heirs brought this wrongful death action against the Idaho Department of Transportation, the Canyon County Highway District, the City of Caldwell, and the Union Pacific Railroad Company. The district court dismissed the claims against the transportation department, and the Heirs have not challenged this ruling on appeal; the city and the highway district each settled their claims with the Heirs. Hence, there are no issues before us in this appeal concerning the liability of the three public agencies.

In their remaining negligence claims asserted against Union Pacific, the Heirs sought recovery under two theories: (1) the train engineer's failure to operate the train at a moderate and safe rate of speed as it approached the crossing; and (2) the railroad company's failure to provide adequate warning devices to protect the crossing. There are no allegations that the railroad company or its engineer violated any statute, rule, or ordinance or otherwise failed to comply with a government directive. Rather, the Heirs' claims are based solely upon the common-law duty owed by a railroad company to exercise ordinary care or reasonable prudence concerning the safety of its grade crossings. The Idaho Supreme Court has articulated this duty as follows:

> The railroad company must comply with any statute or ordinance and a failure to do so is negligence *per se*. In addition thereto and compliance therewith, the railroad company must provide such warnings and safeguards as the relative situations of the

tracks and highways and crossings, and the extent of its use, as a reasonably prudent person would demand as proper precautions for the protection of the traveling public, and a failure to do so constitutes negligence.

*Whiffin v. Union Pacific Railroad Co.*, 60 Idaho 141, 156, 89 P.2d 540, 546–47 (1939). *See also Van v. Union Pacific Railroad Co.*, 83 Idaho 539, 366 P.2d 837 (1961).

Union Pacific moved for summary judgment contending that federal regulations issued by the Secretary of Transportation preempted the common-law duties which it allegedly breached. Specifically, Union Pacific argued that the federal regulations permitting trains to travel through the Ustick Road crossing at eighty miles per hour[3] preempted any state-imposed duty to travel at a slower rate. It additionally asserted that it was not responsible for installing traffic control devices at crossings absent an express directive from the government, contending that federal regulations had allocated that duty to the state and local highway authorities to the exclusion of the railroad companies. In support of this latter contention, Union Pacific argued that because federal law requires states to comply with the Manual on Uniform Traffic Control Devices (the Manual), *see* 23 C.F.R. § 646.214(b)(1), the provisions of the Manual preempt state law. In particular, Union Pacific relied upon language appearing in Part VIII of the Manual, entitled "Traffic Control Systems for Railroad–Highway Grade Crossings":

> the highway agency and the railroad company are entitled to jointly occupy the right-of-way in the conduct of their assigned duties. This requires joint responsibility in the traffic control function between the public agency and the railroad. *The determination of need and selection of devices at a grade crossing is made by the public agency with jurisdictional authority....*

Manual, at 8A–1 (emphasis added.) Based upon its reading of the emphasized language,

Union Pacific asserted that Idaho's state and local highway authorities bear the exclusive responsibility for deciding whether any protective devices at grade crossings are necessary, and if so, which signs or devices are to be installed. The absence of any directive from a relevant public agency to install additional signs or devices at the Ustick Road crossing, it continued, precludes, as a matter of law, any finding that it was negligent for failing to install such devices.

The district court granted Union Pacific's motion and this appeal ensued. For purposes of our review, there are no disputed issues of fact. The sole question presented is whether Union Pacific owes the tort duties which the Heirs allege it has breached. Because this question presents an issue of pure law, we exercise free review.

### Intervening Decisional Law: the *Easterwood* Decision

■ After the submission of the appellate briefs but before oral argument in this case, the United States Supreme Court decided these very issues in *CSX Transportation, Inc. v. Easterwood*, 507 U.S. ——, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993). In that case, the Court held that the Secretary of Transportation's promulgation of regulations setting speed limits preempted any state law duties to travel at slower rates. The Heirs in the instant case since have conceded that this holding disposes of their claim alleging negligent operation of the train.

However, the *Easterwood* Court expressly rejected the railroad company's contention that federal law covered and preempted state tort-law duties to protect grade crossings. *Id.*, 507 U.S. at ——, 113 S.Ct. at 1739–40, 123 L.Ed.2d at 399. In that case the railroad had relied, in part, upon language in the Manual virtually identical to the provision cited by Union Pacific in this case.

Rebuffing the railroad company's argument, the United States Supreme Court characterized the relied-upon language in the Manual as nothing more than "an elliptical

---

3. Federal regulations issued by the Secretary of Transportation pursuant to the Federal Railroad Safety Act of 1970, 84 Stat. 971, *as amended*, 45 U.S.C. §§ 421–447 (1988 Ed. and Supp. II), and codified at 49 C.F.R. § 213.9(a) (1992) set maximum allowable operating speeds for all freight and passenger trains for each class of track on which they travel.

reference in a Government manual otherwise devoted to describing for the benefit of state employees the proper size, color, and shape of traffic signs and signals." *Id.,* 507 U.S. at ——, 113 S.Ct. at 1740, 123 L.Ed.2d at 400. The Court went on to interpret that language, in the context of the entire Manual, as providing "a description of, rather than a prescription for, the allocation of responsibility for grade crossing safety between the Federal and State Governments and between States and railroads." *Id.,* 507 U.S. at ——, 113 S.Ct. at 1740, 123 L.Ed.2d at 400. Finally, the Court held that a state's adoption of the Manual did not operate to supplant the scheme of duties existing under the state's negligence law. *Id.*

Given the holding in *Easterwood,* Union Pacific's defensive assertion that its tort duties concerning the safety devices at its crossings are preempted by federal law cannot stand. Whether the railroad owes that duty will turn upon the application of state law.

### Union Pacific's Common–Law Duty Has Not Been Altered

■■■ Consistent with the Supreme Court's interpretation of the Manual in *Easterwood,* we conclude that Idaho's adoption of the Manual, by itself, does not operate to alter existing tort duties of railroad companies. Nor have we found authority showing that a railroad company's common-law duties have been abrogated by statute. To the contrary, I.C. § 49–202 contains an affirmative indication that by charging public highway agencies with the duty to protect motorists at railroad crossings, the legislature did *not* intend to relieve the railroad of its common-law duties to do the same. Thus, in mandating that state and local highway authorities erect stop signs at all railroad crossings, the legislature expressly provided that "[n]othing in this subsection shall be con-

strued as granting immunity to any railroad company as to liability, if any, for an accident which might occur at a crossing where stop signs are erected and in place, but liability shall be determined as provided by law...." I.C. § 49–202(25).[4]

Based upon the foregoing, we hold the fact that the railroad crossing at Ustick Road was protected by the signs required by statute and ordinance, and the fact that no public authority had ordered the placement of additional safety devices, did not absolve Union Pacific of its duty to place additional warning devices if, under the circumstances, a reasonably prudent person would demand additional safeguards to protect the traveling public.[5] *Accord Runkle v. Burlington Northern,* 188 Mont. 286, 613 P.2d 982, 990 (1980); *Koch v. Southern Pacific Transportation Co.,* 274 Or. 499, 547 P.2d 589 (1976); *see also Smith v. Chesapeake & Ohio Ry. Co.,* 778 F.2d 384 (7th Cir.1985) (applying Indiana law); *Karl v. Burlington Northern Railroad Co.,* 880 F.2d 68 (8th Cir.1989) (applying Iowa law). *But see Turner v. CSX Transportation, Inc.,* 198 Mich.App. 254, 497 N.W.2d 571 (1993) (railroad not negligent in failing to install warning devices at crossing where not directed to do so by public authority), *and Duncan v. Union Pacific R. Co.,* 842 P.2d 832 (Utah 1992) (3–2 decision holding that railroad company is not responsible for installing additional warning devices, where legislature authorized state to upgrade hazardous crossings with public funds).

### Conclusion

We conclude that Union Pacific's common-law duty of care concerning the safety of its grade crossings has been neither preempted by federal law nor abrogated by state statute. To the extent that the summary judgment below was granted on the basis of the district court's contrary holding, the judgment—insofar as relieving Union Pacific

---

4. We note also that an inconsistent reading of the Manual will not override this statute. *See Curtis v. Canyon County Highway Dist. No. 4,* 122 Idaho 73, 831 P.2d 541 (1992) (any provision in the Manual which is inconsistent with Title 49 is void as exceeding the authority under which it was promulgated).

5. The case law indicates that before a duty to place additional devices will arise, the crossing must be shown to be more than ordinarily hazardous. *See Whiffin v. Union Pacific R. Co.,* 60 Idaho 141, 150–51, 89 P.2d 540, 544–45 (1939). The record before us does not indicate that this issue was raised by the summary judgment motion below.

from liability—is vacated and the case is remanded for further proceedings. Costs to the appellants; no attorney fees awarded.

PERRY, J., and REINHARDT, J., Pro Tem., concur.